864 So.2d 157 (2004)
In re Donald Ray PRYOR.
No. 2003-B-2376.
Supreme Court of Louisiana.
January 21, 2004.
Charles B. Plattsmier, Chief Disciplinary Counsel, James T. Daly, Deputy Disciplinary Counsel, for Applicant.
Robert C. Jenkins, Jr., Sheila C. Myers, Donald R. Pryor, New Orleans, for Respondent.

ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from two sets of formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Donald Ray Pryor, an attorney licensed to practice law in Louisiana. The first set of charges, 99-DB-116, alleges eighteen counts of misconduct arising from ten disciplinary complaints filed against respondent between 1996 through 1998. The second set of charges, 01-DB-011, alleges four counts of misconduct based on *158 complaints filed between 1998 through 1999.

UNDERLYING FACTS

99-DB-116

Counts 1 & 2Calloway Matter
In November 1995, Philip Calloway retained respondent for $300 to represent him at a probation revocation hearing in the United States District Court for the Eastern District of Louisiana. At the time he was retained, respondent had not taken the necessary steps to be admitted to practice before the federal court. Nonetheless, respondent attended one hearing on behalf of his client to obtain a continuance. At the time of the retention and the scheduled hearing, respondent was not licensed to practice law in federal court and neglected to take any action to become licensed. Thereafter, respondent took no further steps on behalf of his client and did not communicate with him.
In January 1996, Donis Calloway, Mr. Calloway's wife, filed a complaint with the ODC. The ODC forwarded a copy of the complaint to respondent, but he failed to reply to the ODC's request for information. As a result, the ODC was required to issue a subpoena compelling respondent to appear and produce documents at a scheduled deposition.
In April 1998, over two years after the complaint was filed, respondent refunded the entire legal fee to his former client.

Counts 3 & 4Cummings Matter
In December 1995, Adell Cummings retained respondent for $250 to represent her son, Jimmie Cummings, who had been arrested and incarcerated in Orleans Parish Prison for theft of goods valued under $500. After being retained, respondent took little or no action on behalf of his client, failed to communicate with his client and failed to return or account for the unearned fee.
In November 1998, Ms. Cummings filed a complaint with the ODC.[1] The ODC forwarded a copy of the complaint to respondent, but he failed to reply to the ODC's request for information. As a result, the ODC was required to issue a subpoena compelling respondent to appear and produce documents at a scheduled deposition.

Counts 5 & 6/Expose Matter
On March 5, 1998, Charles Expose retained respondent for the sum of $500 to represent his grandsons, Corey and Antonio Expose, in connection with their arrest for possession with the intent to distribute crack cocaine. According to Mr. Expose, respondent guaranteed he would get them released within twenty-four hours. However, respondent took little or no action on behalf of his clients and failed to obtain their release. Additionally, respondent neglected to communicate with Mr. Expose or with his clients, and failed to return or account for the unearned fee.
In April 1998, Mr. Expose filed a complaint with the ODC. The ODC forwarded a copy of the complaint to respondent, but he failed to reply to the ODC's request for information. As a result, the ODC was required to issue a subpoena compelling respondent to appear and produce documents at a scheduled deposition.
Respondent appeared for deposition in July 1998. At that time, he agreed to promptly provide restitution to Mr. Expose. However, he did not refund Mr. Expose's fee until nine months later.

*159 Count 7/Banks Matter

In early 1998, Carolyn Banks filed a disciplinary complaint against respondent.[2] The ODC forwarded a copy of the complaint to respondent, but he failed to reply to the ODC's request for information. As a result, the ODC was required to issue a subpoena compelling respondent to appear and produce documents at a scheduled deposition. Respondent neglected to appear, requiring the ODC to issue a second subpoena.

Counts 8 & 9/King/Belt Matter
In January 1998, Cora Lee Belt King contacted respondent for the purpose of having a bond set for the release of her son, James Belt, who was incarcerated on a charge of burglary. Ms. King paid respondent a fee of $400. After being retained, respondent met with Ms. King on four occasions, but did not obtain the release of her son. Dissatisfied with his handling of the matter, Ms. King discharged respondent and demanded a refund of the unearned fee. Respondent neglected to account for or return the unearned fee upon request.
In May 1998, Ms. King filed a complaint with the ODC. The ODC forwarded a copy of the complaint to respondent, but he failed to reply to the ODC's request for information. As a result, the ODC was required to issue a subpoena compelling respondent to appear and produce documents at a scheduled deposition.

Counts 10 & 11/Pugh Matter
In April 1998, Velma Louis Pugh contacted respondent for the purpose of having a bond set for the release of her son, Corey Pugh, who was incarcerated based on a charge of possession of stolen property. Ms. Pugh paid respondent $350, with $300 representing the legal fee and $50 representing the processing fee. Respondent took little or no action in the matter, and neglected to communicate with Ms. Pugh or her son. As a result, Ms. Pugh discharged respondent and obtained other counsel. After being discharged, respondent did not account for or return the unearned fee.
In May 1998, Ms. Pugh filed a complaint with the ODC. The ODC forwarded a copy of the complaint to respondent, but he failed to reply to the ODC's request for information. As a result, the ODC was required to issue a subpoena compelling respondent to appear and produce documents at a scheduled deposition. Respondent appeared at the deposition, at which time he testified he was unable to recall the specifics of the case, but agreed to provide information in writing to the ODC. He failed to do so.

Counts 12 & 13Tillery Matter
In February 1998, Elizabeth Caffery retained respondent to represent Darrin Tillery in a criminal matter. Ms. Caffery, with the assistance of Mr. Tillery's sister, paid respondent $650 of a $750 fee seeking the immediate release of Mr. Tillery, who had been as incarcerated following his arrest for possession with the intent to distribute crack cocaine and marijuana. Respondent visited Mr. Tillery on one occasion. Thereafter, he failed to take any further action on behalf of Mr. Tillery, failed to communicate with Mr. Tillery, Mr. Tillery's family or Ms. Caffery and failed to appear in court on Mr. Tillery's behalf. Subsequently, respondent was discharged. After being discharged, he failed to refund the unearned fee.
*160 In July 1998, Ms. Caffery filed a complaint with the ODC. The ODC forwarded a copy of the complaint to respondent, but he failed to reply to the ODC's request for information. As a result, the ODC was required to issue a subpoena compelling respondent to appear and produce documents at a scheduled deposition. Respondent neglected to appear. Subsequently, the ODC made two additional formal requests for information from respondent regarding the complaint. He finally responded in February 1999.

Count 14Julian Matter
In April 1998, Demitri and Gregory Julian filed a disciplinary complaint with the ODC against respondent.[3] The ODC forwarded a copy of the complaint to respondent, but he failed to reply to the ODC's request for information. As a result, the ODC was required to issue a subpoena compelling respondent to appear and produce documents at a scheduled deposition. On the day of the scheduled deposition, respondent's secretary contacted the ODC seeking to reschedule the deposition due to a death in the family. The ODC rescheduled the deposition for November 30, 1999. Subsequently, respondent failed to appear on the rescheduled date.

Count 15 & 16Brown Matter
In April 1998, Lorenzo Brown Williams retained respondent to represent her son, Preston Brown, who was arrested for possession of crack cocaine. She paid respondent $375 towards a $1,500 fee. Subsequently, respondent took little or no action on behalf of his client, failed to communicate with his client and failed to return or account for the unearned fee.
In October 1998, Ms. Williams filed a complaint with the ODC. The ODC forwarded a copy of the complaint to respondent, but he failed to reply to the ODC's request for information. As a result, the ODC was required to issue a subpoena compelling respondent to appear and produce documents at a scheduled deposition.
On the morning of the scheduled deposition, respondent contacted the ODC to advise he had to be in court and sought a three-day continuance. The ODC rescheduled the deposition to accommodate respondent. Subsequently, respondent failed to appear on the rescheduled date.

Count 17 & 18Moses Matter
In September 1998, Tressie Moses retained respondent for $450 to represent her son, Plase J. Moses, who was charged with armed robbery. Thereafter, respondent took little or no action on behalf of Mr. Moses. Respondent did not appear at Mr. Moses' arraignment, and Mr. Moses eventually pled guilty to a lesser charge in order to obtain his own release. Subsequently, Ms. Moses discharged respondent and sought a return of the unearned fee. Respondent did not account for or return the unearned fee.
In December 1998, Ms. Moses filed a complaint with the ODC. The ODC forwarded a copy of the complaint to respondent, but he failed to reply to the ODC's request for information. As a result, the ODC was required to issue a subpoena compelling respondent to appear and produce documents at a scheduled deposition. Respondent appeared at the deposition, but testified that he was unable to recall the specifics of the case.

01-DB-011

Count 1Brown Matter
In early November 1998, Dannette Brown, a Texas resident, retained respondent *161 to represent her sister, Joyce Johnson, in a criminal matter. On November 9, 1998, Ms. Brown wired respondent $600 for his legal fee. Between November 10 and 12, 1998, Ms. Brown made numerous attempts to communicate with respondent by telephone, but was unable to reach him. She spoke with his office staff, who advised on each occasion that her sister would be released that night. However, Ms. Brown became concerned with respondent's progress in the matter and failure to communicate with her. As a result, she rented a vehicle and traveled from Texas to meet with respondent personally. When she finally met with him on November 23, 1999, she learned that he had not taken any action on her sister's behalf. Ms. Brown then discharged respondent and retained other counsel, who successfully obtained the release of her sister on December 3, 1998. After being discharged, respondent failed to refund the unearned fee to Ms. Brown.
Thereafter, Ms. Brown filed a complaint with the ODC. The ODC forwarded a copy of the complaint to respondent, but he failed to reply to the ODC's request for information. As a result, the ODC was required to issue a subpoena compelling respondent to appear and produce documents at a scheduled deposition. Respondent eventually filed an untimely response, alleging he earned the entire fee by communicating with the trial judge about the matter.

Count 2LeBlanc Matter
In March 1998, Eurine LeBlanc retained respondent for $1,050 to represent his sons, Wayne and Stanley LeBlanc, in their criminal matters. Respondent took little action on behalf of his clients, and neglected to communicate with his clients and their family. In fact, the minutes from the criminal proceeding involving Wayne Le-Blanc, who was incarcerated on charges of simple burglary, indicate he was represented by other counsel in court appearances from May 14 to September 24, 1998.[4]
Approximately one year after retaining respondent, Eurine LeBlanc discharged him and requested a refund of the unearned fee. Respondent failed to comply with the request.
In February 1999, Patricia Andrew, on behalf of her father, Eurine LeBlanc, filed a complaint with the ODC. The ODC forwarded a copy of the complaint to respondent, but he failed to reply to the ODC's request for information. As a result, the ODC was required to issue a subpoena compelling respondent to appear and produce documents at a scheduled deposition. Respondent eventually provided an accounting, but failed to return the unearned fee.

Count 3Loggins Matter
On May 26, 1999, Duane M. Loggins retained respondent to obtain his release from jail on bond. Mr. Loggins paid respondent a total of $1,200, $200 of which represented the "processing fee."[5] Shortly after retaining respondent, Mr. Loggins was released due to prison overcrowding. After Mr. Loggins was released, respondent failed to communicate with him, as well as refused to account for or refund the funds paid to him.
In July 1999, Mr. Loggins filed a complaint with the ODC. The ODC forwarded a copy of the complaint to respondent, but he failed to reply to the ODC's request for *162 information. As a result, the ODC was required to issue a subpoena compelling respondent to appear and produce documents at a scheduled deposition. Respondent ultimately provided an accounting to Mr. Loggins and refunded $350 of his fee.

Count 4Payton Matter
On October 14, 1999, Perry Payton retained respondent for $500 to represent him in criminal trial proceedings which were scheduled to commence five days later in Plaquemines Parish. After being retained, respondent neglected to communicate with Mr. Payton and his client's family. On October 18, 1999, the day before the scheduled trial, respondent formally enrolled as counsel. On the morning of trial, respondent contacted the court to advise that he would be late due to a previously scheduled matter in New Orleans. He also faxed a motion for continuance to the trial court, but neglected to ascertain whether or not it had been granted. The trial proceeded in respondent's absence. Mr. Payton entered a plea of guilty with the assistance of courtappointed counsel. Later, Mr. Payton rejected respondent's offer to represent him in the sentencing phase of his criminal proceedings, and requested a refund of the unearned fee. Respondent failed to comply.
In November 1999, Mr. Payton filed a complaint with the ODC advising of respondent's misconduct and seeking a return of the unearned fee. Respondent ultimately refunded $250 of the $500 fee.

DISCIPLINARY PROCEEDINGS

99-DB-116

Formal Charges
Following its investigation, the ODC filed eighteen counts of formal charges against respondent alleging that his conduct violated Rules 1.1 (incompetence), 1.3 (lack of due diligence and promptness), 1.4 (failure to communicate with a client), 1.5 (failure to account for and refund unearned fees), 1.16(d) (improper termination of representation), 3.4(c) (failure to comply with tribunal orders), 5.5 (violating disciplinary regulation of another jurisdiction through unauthorized practice of law in that jurisdiction), 8.1 (failure to comply with ODC's requests for information), 8.4(a) (violation of Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (engaging in conduct prejudicial to the administration of justice) and 8.4(g) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct. Respondent filed an answer generally denying any wrongdoing.

Formal Hearing
Immediately prior to the formal hearing, respondent stipulated to the allegations of the formal charges. Accordingly, the formal hearing was limited to the presentation of mitigating evidence. Respondent did not testify at the hearing, but presented witnesses who testified as to his good character and reputation.

01-DB-111

Formal Charges
On November 2, 2001, after the hearing had been conducted on the charges in 99-DB-116, the ODC filed four counts of formal charges against respondent alleging violations of Rules 1.3 (lack of due diligence and promptness), 1.4 (failure to communicate with a client), 1.4(a) (failure to keep client reasonably informed about the status of legal matter and failure to comply with reasonable requests for information), 1.5(f)(6) (failure to account for or refund unearned fee, and/or place disputed funds in trust), 1.16(d) (improper termination of representation), 8.1(c)(violating disciplinary *163 regulation of another jurisdiction through unauthorized practice of law in that jurisdiction) and 8.4(g) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct.
Respondent neglected to respond to the formal charges, and they were deemed admitted. Subsequently, respondent retained counsel and moved to recall the deemed admitted order, which was granted by the hearing committee chairman. Respondent then answered the formal charges, generally denying any wrongdoing.

Formal Hearing
Subsequently, a formal hearing was scheduled. Prior to the hearing, the parties entered into a joint stipulation in which respondent admitted to most of the allegations of the formal charges. As mitigating evidence, the parties stipulated that, had respondent called the witnesses who testified at the hearing in 99-DB-116, these witnesses would testify in accordance with their earlier testimony. Respondent also produced character letters which had been submitted at the hearing in 99-DB-116.

Recommendations of the Hearing Committees

99-DB-116
In light of respondent's stipulation to the allegations of the formal charges, the hearing committee limited its consideration to an appropriate sanction for his misconduct.
As to the Calloway matter subject of Court 1, the committee observed that, although respondent may have engaged in the unauthorized practice of law in federal court, any violation was only technical in nature. In support, it found the length of respondent's representation was brief and no injury was caused by his actions.
As to respondent's neglect of client matters, the committee found respondent's actions stemmed in some respects from his lack of managerial skills and failure to sufficient communicate with his clients relative to his progress on their respective cases.
The committee expressed concern over respondent's repeated failures to cooperate with the ODC. It observed the ODC "bent over backwards" to accommodate respondent's schedule, yet respondent still failed to appear for depositions. The committee rejected respondent's argument that he did not understand the seriousness of his failure to cooperate, citing his prior disciplinary record consisting of, among other things, seven admonitions for a failure to cooperate.[6]
Relying on the ABA's Standards for Imposing Lawyer Sanctions and jurisprudence from this court, the committee concluded the baseline sanction is disbarment or suspension for cases involving multiple counts of neglect and the failure to cooperate, and multiple instances of prior discipline. As aggravating factors, the committee recognized respondent's prior disciplinary offenses, pattern of misconduct, and, in some cases, late restitution.[7]
*164 Based on its findings, the committee recommended imposition of a two-year suspension with eleven months deferred, subject to a one-year supervised probation with conditions to be suggested by the probation monitor.

01-DB-111
A separate hearing committee heard the charges in 01-DB-111. This committee concluded respondent neglected two clients' matters, failed to communicate with a client, failed to return an unearned fee and failed to cooperate with the ODC in three matters, in violation of Rules 1.3, 1.4(a), 1.5(f)(6), 8.1(c), 8.4(c) and 8.4(g), respectively.
Relying on the ABA's Standards for Imposing Lawyer Sanctions and jurisprudence from this court, the committee concluded the baseline sanction is suspension. In aggravation, it recognized respondent's prior disciplinary record,[8] pattern of misconduct, multiple offenses and substantial experience in the practice of law.[9] As mitigating factors, the committee observed respondent had overcome financial adversity to become a lawyer, that he is dedicated to the majority of his clients, and acted as a zealous advocate for his clients' interests.
In imposing sanctions, the committee stated that it was in agreement that respondent's misconduct appears to arise from respondent's inability to properly manage his case load. However, it concluded respondent's inability to manage his practice did not fully explain his failure to cooperate.
Based on these considerations, the committee recommended respondent be suspended from the practice of law for a period of sixty days, fully-deferred, subject to a six-month period of supervised probation.

Recommendation of the Disciplinary Board
The recommendations of the hearing committees in 99-DB-116 and 01-DB-111 were consolidated for review by the disciplinary board. Based on its review of the record, the disciplinary board concluded the committees' findings of fact were not manifestly erroneous. It found respondent incompetently handled and neglected client matters, failed to communicate with his clients, failed to return unearned fees and failed to cooperate with the ODC, in violation of Rules 1.1, 1.3, 1.4, 1.5, 1.16(d), 3.4(c), 5.5, 8.1(c), 8.4(a), 8.4(c), 8.4(d) and 8.4(g) of the Rules of Professional Conduct, respectively.
Addressing the issue of sanctions, the board found respondent knowingly violated duties to his clients and the legal system, and as a professional. It noted respondent's clients were harmed by his failure to diligently pursue their cases, failure to appear on their behalf at court, failure to communicate and failure to refund unearned fees on a timely basis. The board recognized the disciplinary system was harmed by respondent's repeated failure to cooperate in the numerous disciplinary complaints against him.
As aggravating factors, the board recognized respondent's prior disciplinary record, *165 pattern of misconduct, multiple offenses, failure to cooperate and substantial experience in the practice of law. The board found remorse to be the only mitigating factor.
Relying on the ABA's Standards for Imposing Lawyer Sanctions and jurisprudence from this court, the board recommended that respondent "be suspended for thirty-six months, with eleven months deferred, an additional twelve months deferred if respondent works in a supervised office setting such as the indigent defenders program for the deferred twelve months, twenty-three months of probation with a practice monitor, attend Ethics School and pay all costs associated with the proceedings."
The ODC filed an objection to the disciplinary board's recommendation. Accordingly, the matter was docketed for briefing and argument in accordance with Supreme Court Rule XIX, § 11(G).

DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992). In light of respondent's stipulations and other evidence in the record, we conclude the ODC has proven the allegations of professional misconduct. Accordingly, we now turn to a discussion of the appropriate sanction.
In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
Taken as a whole, the record demonstrates that respondent's misconduct is negligent rather than intentional and stemmed in large measure from poor office management skills. In most instances, respondent performed the services for which he was retained, but neglected to promptly and adequately communicate with his clients concerning the status of their matters. While respondent's actions may have delayed the resolution of his clients' legal matters, there is no evidence in the record that his misconduct caused serious harm to his clients.
In aggravation, we recognize respondent's prior disciplinary record, pattern of misconduct, multiple offenses, failure to cooperate and substantial experience in the practice of law. However, we find several significant mitigating factors are present, including the absence of any dishonest or selfish motive, payment of restitution and demonstration of sincere remorse. We further recognize respondent's good character and reputation in the community, as the record is replete with testimony from respected clergy, judges and attorneys who attest to respondent's zealous advocacy in favor of his criminal clients, who are often incarcerated and of limited means.
Under these circumstances, we believe a two-year suspension from the practice of law is warranted. However, in light of the significant mitigating circumstances, we will defer eighteen months of this suspension and place respondent on supervised *166 probation following the completion of the active portion of his suspension.

DECREE
Upon review of the findings and recommendations of the hearing committees and disciplinary board, and considering the record, and briefs filed by the parties, it is ordered that Donald Ray Pryor, Louisiana Bar Roll number 18389, be suspended from the practice of law for a period of two years, with eighteen months of the suspension deferred. Following the completion of the active portion of his suspension, respondent shall be placed on probation for a period of two years under the supervision of a practice monitor. Any misconduct during the period of probation may be grounds for making the deferred portion of the suspension executory or imposing other discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
NOTES
[1] Interestingly, Ms. Cummings drafted and signed the complaint in February 1996, but it was not filed until November 1998, almost three years later.
[2] The underlying facts of the complaint are not relevant, as the ODC did not pursue the merits of the complaint.
[3] The facts of this complaint are not relevant, as the ODC ultimately did not pursue the complaint on the merits.
[4] Respondent's name does not appear on any of the court dockets as representing counsel in either of the LeBlanc criminal matters.
[5] There is some dispute as to whether $1,000 of this amount was to be used for bail. The receipt for the payment states the $1,000 was for "legal services."
[6] Respondent was admonished for failure to cooperate on seven prior occasions between 1991 to 1995. Additionally, he was admonished four times for incompetence, neglect and failure to communicate.
[7] The committee made a finding of fact that respondent was engaged for limited purposes for each of the bond clients and performed services that entitled him to fees in most of the cases. It found respondent issued some refunds "in an apparent effort to stem the tide of complaints." However, it found no further restitution was due to the complainants.
[8] In addition to the seven admonitions imposed between 1991 to 1995, which were identified by the hearing committee in 99-DB-116, respondent was also admonished on two additional occasions following the compilation of the record in the earlier proceeding. In 1999, he was admonished for engaging in conduct prejudicial to the administration of justice stemming from the failure to pay a third party medical provider. Subsequently, he was admonished in 2001 for neglect of a legal matter.
[9] Respondent was admitted to the practice of law in 1987.