ATTORNEY DISCIPLINARY PROCEEDINGS
hPER CURIAM.
This attorney disciplinary proceeding involves two counts of misconduct filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Barry J. Fontenot, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS

Count I-Martin Matter

In May 1998, Virginia Martin contacted respondent at his law office in Opelousas, Louisiana and retained him to represent her and her minor daughter in a personal injury action arising from an automobile accident. Ms. Martin suffered severe injuries in the accident, resulting in considerable medical expenses.
*819 In April 1999, respondent instituted suit on behalf of Ms. Martin and her minor daughter, but withheld service on the defendants. Shortly thereafter, the tortfea-sor’s insurance carrier tendered its policy limits of $10,000 for Ms. Martin’s injuries.
Respondent deposited the check in his client trust account with the intent to negotiate a reduction of Ms. Martin’s medical bills, so she could receive some portion of the settlement funds.[1] However, respondent made little or no effort to have Ms. Martin’s medical bills reduced, nor did he disburse the funds. Rather, the settlement funds simply remained in respondent’s client trust account. During this time, 12respondent took no action as to the claims of Ms. Martin’s minor daughter, and her claim was ultimately dismissed due to respondent’s failure to request service timely.
Respondent eventually closed his law office in Opelousas and relocated to Baton Rouge to take a job with the East Baton Rouge District Attorney’s Office. Respondent did not advise Ms. Martin that he was closing his office, nor did he provide a forwarding address for mail sent to his former office.
During this time, Ms. Martin attempted to contact respondent regarding her case, but was unable to locate him. Likewise, a social worker attempted to contact respondent to determine the status of Ms. Martin’s lawsuit, as it would have an effect on her welfare benefits. Because the social worker was unable to contact respondent, Ms. Martin’s welfare benefits were terminated.
Subsequently, Ms. Martin filed a disciplinary complaint with the ODC. Approximately one year after the complaint was filed, respondent issued a check drawn on his client trust account to Ms. Martin in the amount of $3,338.33. On the same day, respondent also issued a check drawn on his trust account to Ms. Martin’s minor child in the amount of $3,333.33. Additionally, respondent notified Ms. Martin that she had a potential malpractice action against him stemming from his neglect of her minor daughter’s claim. Respondent placed the remaining settlement funds in the registry of the court.[2]

Count II-Orbego Chiropractic Clinic Matter

In August 2000, Susan Saucier, Finance Manager for Ortego Chiropractic Clinic (“Ortego”), filed a complaint with the ODC advising respondent had neglected to laprovide reimbursement pursuant to a medical lien in the total amount of $4,015 for chiropractic services rendered by Orte-go to three of respondent’s clients, Roxanne Thomas, Patrick Jack and Sandra Faye Henry.[3] Ms. Saucier alleged she had made numerous efforts to communicate with respondent regarding the amount owed; however, he refused to respond to her certified letters and numerous telephone calls.
The ODC conducted an investigation into the matter. During the course of its investigation, the ODC obtained recorded statements from respondent’s three *820 clients, Ms. Thomas, Mr. Jack and Ms. Henry.
Ms. Thomas stated that in the fall of 1998, she went to respondent’s law office to seek representation in a personal injury matter against Allstate Insurance Company. She claimed she met with respondent’s secretary, who had Ms. Thomas sign an. employment contract and arranged for her to seek treatment with Ortego. Ms. Thomas claimed she subsequently made numerous efforts to communicate with respondent, but was unable to contact him.
Mr. Jack advised the ODC in his recorded statement that he retained respondent following an automobile accident around late 1998 or early 1999. He recalled that respondent sent him to a chiropractor in Opelousas for nine office visits, but was unable to remember the specific name of the chiropractor. Mr. Jack also stated respondent neglected to appear for a scheduled court date and failed to advise him that his case had been dismissed.
Ms. Henry stated that she retained respondent in December 1997 to represent her in a personal injury matter. She contended that respondent at one point asked her whether she was willing to accept $4,000 for her case, to which she agreed. However, Ms. Henry’s personal injury claim later prescribed. Respondent then gave her a list |4of local attorneys from whom she could seek independent legal advice to determine if she had a legal malpractice claim against him. Ms. Henry eventually retained new counsel and settled her malpractice claim with respondent for $6,000. Although he settled the malpractice claim, respondent admitted he failed to pay Ms. Henry’s outstanding balance at Ortego.
DISCIPLINARY PROCEEDINGS

Formal Charges

Following its investigation, the ODC filed two counts of formal charges against respondent. The ODC alleged respondent’s actions in the Martin matter violated Rules 1.1 (incompetence), 1.3 (lack of diligence), 1.4 (failure to communicate), 3.2 (failure to expedite litigation), 1.15(b) (failure to promptly deliver funds or property owed to a client or third party) and 1.16(d) (failure to protect client interests at termination of representation) of the Rules of Professional Conduct. As to the Ortego matter, the ODC alleged respondent’s actions violated Rules 1.3 (lack of diligence), 1.4 (failure to communicate), 1.15(b) (failure to promptly deliver funds or property owed to a client or third party) and 1.16(d) (failure to protect client interests at termination of representation) of the Rules of Professional Conduct.
Respondent filed an answer. He admitted some of the allegations and requested an opportunity to present a defense and mitigating evidence.
The case proceeded to a formal hearing. At the hearing, the parties entered into a joint stipulation of facts. Respondent admitted to the misconduct as alleged in the formal charges and presented mitigating evidence. In particular, respondent’s wife | (¡testified respondent suffered from depression and was under tremendous pressure during the time of the misconduct due to work and family responsibilities.[4]

Recommendation of the Hearing Committee

In light of respondent’s admission of misconduct, the hearing committee found *821 clear and convincing evidence to support each of the formal charges. Relying on the ABA’s Standards for Imposing Lawyer Sanctions and jurisprudence from this court, the committee concluded the baseline sanction for this misconduct was a suspension. As aggravating factors, the committee recognized a pattern of misconduct, multiple offenses, and the vulnerability of the victims. In mitigation, the committee found respondent had no prior disciplinary record, was inexperienced in the practice of law and did not act with a dishonest or selfish motive. The committee further identified respondent’s cooperation with the ODC, good character and reputation, remorse, efforts at restitution after the filing of formal charges, and personal and emotional problems.
Based on its findings, the committee recommended that respondent be suspended from the practice of law for a period of nine months, with three months deferred, subject to an eighteen-month period of supervised probation with conditions.[5] In light of respondent’s voluntary withdrawal from the practice of law, Rthe committee recommended the suspension run retroactively from January 1, 2003, which would have had the effect of making respondent immediately eligible to engage in the practice of law.

Recommendation of the Disciplinary Board

The board accepted the committee’s factual findings with only one minor change.[6] The board also adopted all of the aggravating and mitigating factors cited by the committee, although it noted that respondent did not take any significant efforts to make restitution or rectify the conse *822 quences of his misconduct until after the institution of formal charges.
|7Based on its review of the record, the board found the appropriate sanction for respondent’s misconduct was a suspension from the practice of law for a period of nine months, with three months deferred, subject to an eighteen-month period of supervised probation. However, the board rejected the committee’s reasoning that the imposition of the suspension should run retroactive to January 1, 2008, noting there was no support in Supreme Court Rule XIX or in the jurisprudence for such a retroactive suspension. The board also adopted the hearing committee’s proposed conditions of probation, with one exception.[7] Additionally, the board determined respondent could satisfy the condition that he obtain additional continuing legal education by attending and successfully completing the Louisiana State Bar Association’s Ethics School program.
Respondent filed an objection to the findings and recommendation of the disciplinary board. Accordingly, the matter was docketed for briefing and argument in accordance with Supreme Court Rule XIX, § 11(G).
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is | ^applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Based on the stipulation of facts and respondent’s admission to the allegations of misconduct, the record supports the conclusion that respondent failed to pursue client matters, neglected to reimburse medical providers for treatment rendered to clients and failed to protect his clients’ interests at the termination of representation.
Having found evidence of professional misconduct, the next issue presented for our consideration is the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s actions caused actual harm to Ms. Martin and the Ortego Chiropractic Clinic by depriving them of funds to which they were entitled for an extended period of time. By simply abandoning his practice with no notice to his clients, respondent caused them undue frustration and *823 created the potential for harm. The baseline sanction for such misconduct is a suspension from the practice of law.
Nonetheless, we recognize there are significant mitigating factors in this case. Taken as a whole, the record demonstrates that respondent’s actions were not the product of a dishonest or selfish motive, but resulted from an unusual combination of personal and emotional problems during the time of the misconduct. Although these 1problems do not excuse respondent’s misconduct, they serve to mitigate the harshness of the sanction.
We conclude the proper sanction for respondent’s misconduct is a suspension from the practice for a period of nine months. However, in light of the mitigating factors, we defer all but three months of the suspension.[8] Following the completion of the active portion of respondent’s suspension, we shall place respondent on supervised probation for a period of eighteen months, subject to the conditions recommended by the hearing committee, as modified by the disciplinary board.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Barry J. Fonte-not, Louisiana Bar Roll number 21279, be suspended from the practice of law for a period of nine months. All but three months of this suspension shall be deferred. Following the completion of the active portion of his suspension, respondent shall be placed on probation for a period of eighteen months subject to the conditions recommended by the hearing committee, as modified by the disciplinary board. Any violation of these conditions or any other misconduct during the probationary period may be grounds for making the deferred portion of the suspension ex-ecutory or imposing other discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Ms. Martin’s medical expenses exceeded $75,000. These expenses, along with respondent's legal fees, clearly exceeded the $10,000 policy limits.

. Ultimately, Ms. Martin was awarded the balance of the settlement funds that had been placed in the registry of the court. As a result, she recovered all but approximately $120 of the $10,000 settlement award.

.According to the disciplinary complaint, respondent owed the following itemized amounts: Roxanne Thomas — $1,180; Patrick Jack — $1,460; and Sandra Faye Henry— $1,375.

. According to respondent’s wife, beginning in 1997, she began working in Baton Rouge and later in Dallas. During this time, respondent attempted to maintain his law practice in Opelousas while commuting to Baton Rouge, where the couple’s children were enrolled in school,

. The committee recommended the following probationary conditions:
1) That respondent promptly and timely pay all outstanding and past due bar dues and take the required number of continuing legal education credits and comply with all obligations necessary to have his license to practice law reinstated;
2) That a probation monitor be appointed to monitor respondent's probation and his compliance with respondent’s terms of probation;
3) That, in the event respondent re-enters the practice of law and establishes a private practice, he attend four (4) hours of continuing legal education in the area of office management and four (4) hours of ethics in each year of his probation in addition to the requisite number of hours mandated under the Supreme Court Rules;
4) That in the event respondent re-enters the private practice of law that he have his trust account records audited by a certified public accountant on an annual basis and that the accountant provide the probation monitor with a written report of his findings, all at respondent's expense;
5) That, in the event respondent re-enters the private practice of law, he contact an attorney with ten years or more experience to act as a practice monitor or "mentor” for respondent’s private practice and that the mentor provide the probation monitor with quarterly reports regarding respondent's private practice;
6) That if respondent is under current treatment by a licensed mental health provider, that the mental health provider submit a report detailing the current status of respondent’s treatment, identify any medication prescribed for respondent, provide a current diagnosis and prognosis and include an opinion as to the respondent’s medical ability to practice law;
7) That respondent shall not violate the Rules of Professional Conduct during the period of probation; and
8) That respondent shall pay all costs for these disciplinary proceedings within sixty days of issuance of the Louisiana Supreme Court’s Order of Final Discipline.

. The committee found that respondent allowed Ms. Thomas’ claim to prescribe. Before the board, respondent pointed out that he did not stipulate that he represented Ms. Thomas or allowed her claim to prescribe. The board agreed with respondent's argument and rejected the committee's finding on this point.

. The board rejected the committee's proposed condition that respondent’s mental health provider submit a report detailing the status of respondent’s treatment, diagnosis and prognosis. In doing so, the disciplinary board observed that the record did not contain sufficient evidence to establish that respondent suffers from a mental disability.

. We decline to adopt the committee's recommendation that the suspension be made retroactive to the date respondent “voluntarily withdrew” from the practice of law. Except in cases where a lawyer has been placed on interim suspension, there is no mechanism in Supreme Court Rule XIX for a retroactive suspension.