*199
 
 ATTORNEY DISCIPLINARY PROCEEDINGS
 

 PER CURIAM.
 

 | xThis disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, James Spruel, Jr., an attorney licensed to practice law in Louisiana.
 

 UNDERLYING FACTS
 

 The underlying facts of this matter are not in dispute, having been admitted by respondent.
 

 Katrina Simmons Joseph retained respondent to handle her personal injury matter. In September 2005, respondent settled Ms. Joseph’s case and withheld funds to pay $2,790 in medical expenses due to Chiropractic USA. However, on December 8, 2006, the bill remained unpaid. Ms. Joseph called respondent’s office several times regarding the unpaid bill, but respondent did not respond to her calls.
 

 In February 2007, Ms. Joseph filed a disciplinary complaint against respondent. In response to the complaint, respondent acknowledged that he failed to promptly disburse the settlement funds to Chiropractic USA and failed to safeguard those funds. However, he did not provide an explanation to either Ms. Joseph or the ODC for his failure to timely pay the bill. On March 27, 2007, respondent issued a check from his office account in the amount of $2,790 to pay Chiropractic USA.
 

 | .DISCIPLINARY PROCEEDINGS
 

 In 2008, the ODC filed one count of formal charges against respondent, alleging that his conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.15(a) (safekeeping property of clients and third persons), 1.15(d) (failure to timely remit funds to a client or third person), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).
 

 Respondent answered the formal charges and admitted the factual allegations as described above. However, he requested that the charges be dismissed, arguing that his conduct was negligent and that significant mitigating factors are present.
 

 Heaving Committee Report
 

 This matter proceeded to a formal hearing on the merits. After considering the evidence and testimony presented at the hearing, the hearing committee made the following factual findings:
 

 
 *200
 
 Since January 1990, respondent has been employed by the Calcasieu Parish District Attorney’s Office. Since December 1994, his primary responsibility with respect to that employment is serving as general counsel to the Calcasieu Parish School Board. He also maintains a small private law practice as time permits.
 

 Respondent settled Ms. Joseph’s personal injury matter around mid-September 2005 for approximately $8,800, an amount to which Ms. Joseph agreed. Respondent withheld $2,790 from the settlement to pay Chiropractic USA, and Ms. Joseph agreed to this also. Respondent hoped to negotiate a reduced bill, believing he could save |sMs. Joseph twenty to twenty-five percent. Ms. Joseph’s portion of the settlement was disbursed to her by check on September 21, 2005.
 

 Hurricane Rita struck Southwest Louisiana on September 24, 2005. In the days between the disbursement of settlement funds to Ms. Joseph and Rita’s landfall, respondent and his family prepared their home for the hurricane and made plans to evacuate. Respondent also dealt with additional responsibilities to help the school board prepare for Rita. Furthermore, respondent’s 19-year-old son, a college student in Nacogdoches, Texas, was admitted to the hospital with a serious medical condition.
 

 Respondent and his family evacuated to Nacogdoches and stayed with their son until his condition stabilized. They then traveled to Baton Rouge, where they stayed with respondent’s daughter in her small apartment. When they returned to Lake Charles, they dealt with repairs to their storm-damaged home. Stress levels within respondent’s family remained abnormally high for a significant period of time following Rita.
 

 After Rita, respondent was absorbed with issues involving the school board and its attempt to return to normalcy. The school board’s recovery was slow, and it did not return to normal until the fall of 2007. During the recovery period, respondent experienced an unusually high level of stress and worked very long hours. He was, as his wife described, “bogged down.”
 

 Meanwhile, Ms. Joseph’s Chiropractic USA bill remained unpaid. The funds withheld from Ms. Joseph’s settlement to pay the bill were never segregated from respondent’s office account. For seven months after disbursement of the settlement funds, the balance of respondent’s office account fell below the amount withheld to pay the bill.
 

 14Only after Ms. Joseph filed a disciplinary complaint did respondent realize the bill remained unpaid. Ms. Joseph wanted respondent to send the amount of the unpaid bill directly to her. However, because the funds rightfully belonged to Chiropractic USA, respondent paid the full amount of the bill directly to Chiropractic USA. He tried to notify Ms. Joseph of the payment, leaving a message on her answering machine that included an apology.
 

 Respondent admitted that he never felt he had a reason to segregate clients’ funds from his own. He also admitted that he never had a trust account. He further admitted that his office account balance fell below the amount owed to Chiropractic USA, candidly stating that he spent more money than he should have and did not safeguard Ms. Joseph’s funds. Finally, he admitted to using her funds for other purposes. However, respondent now maintains a client trust account, which he opened in 2008.
 

 Based on these facts, the committee determined that respondent violated Rules 1.3, 1.15(a), and 1.15(d). The committee found no evidence that respondent violated Rule 1.4 because Ms. Joseph failed to testi
 
 *201
 
 fy at the hearing;
 
 [1]
 
 thus, no evidence was presented to substantiate her claim that respondent did not return her telephone calls. The committee also found no evidence that respondent violated Rules 8.4(a) or 8.4(c) because his misconduct resulted from negligence, not from dishonesty, fraud, deceit, or misrepresentation.
 

 The committee determined that respondent negligently violated duties owed to Ms. Joseph, causing her potential harm. The committee further determined that the baseline sanction is in the range of a public reprimand to suspension based on the ABA’s
 
 Standards for Imposing Lawyer Sanctions.
 

 IfiThe committee found the following aggravating factors present: prior disciplinary offenses
 
 [2]
 
 and substantial experience in the practice of law (admitted 1979). Additionally, the committee noted that respondent’s failure to maintain a client trust account and segregate client funds existed for many years prior to this matter. The committee also noted the delay in payment to Chiropractic USA caused Ms. Joseph to lose the opportunity to negotiate a reduced bill. In mitigation, the committee found personal or emotional problems, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, character or reputation, and remorse. Additionally, the committee noted that the evidence showed respondent immediately paid Chiropractic USA’s bill as soon as he learned of it.
 

 After considering case law involving similar misconduct,
 
 [3]
 
 the committee recommended that respondent be suspended from the practice of law for six months, fully deferred, subject to one year of supervised probation and completion of Trust Accounting School.
 

 Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.
 

 Disciplinary Board Recommendation
 

 After review, the disciplinary board adopted the hearing committee’s findings that respondent violated Rules 1.3, 1.15(a), and 1.15(d) of the Rules of Professional Conduct. Specifically, the board found that respondent failed to pay Chiropractic | (iUSA after settling Ms. Joseph’s case and failed to safeguard those funds because he did not have a client trust account. The board also agreed that the allegation regarding respondent’s failure to communicate with Ms. Joseph was not proven.
 

 Based on these findings, the board determined that respondent negligently violated duties owed to his client and the public. He caused potential harm to Ms. Joseph. After considering the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the board determined that the baseline sanction is suspension.
 

 
 *202
 
 In aggravation, the board found prior disciplinary offenses and substantial experience in the practice of law. In mitigation, the board found personal or emotional problems, timely good faith effort to make restitution or to rectify the consequences of the misconduct, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, and character or reputation.
 

 Turning to the issue of an appropriate sanction, the board noted that this court has deferred a significant portion of the suspension in cases involving failure to remit funds to third-party medical providers. In support, the board cited
 
 In re: Fontenot,
 
 04-0079 (La.5/25/04), 874 So.2d 817 (nine-month suspension, with all but three months deferred, followed by an eighteen-month period of supervised probation with conditions), and
 
 In re: Alex,
 
 02-1289 (La.1/14/03), 835 So.2d 455 (fully deferred thirteen-month suspension, subject to a two-year period of probation).
 

 Further noting that this matter involves one instance of failing to promptly pay a third-party medical provider from a client’s settlement, the board recommended that respondent be suspended from the practice of law for six months, fully deferred, subject to one year of supervised probation and completion of Trust Accounting School.
 

 | Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
 

 DISCUSSION
 

 Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence.
 
 In re: Quaid,
 
 94-1316 (La.11/30/94), 646 So.2d 343;
 
 Louisiana State Bar Ass’n v. Boutall,
 
 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings.
 
 See In re: Caulfield,
 
 96-1401 (La.11/25/96), 683 So.2d 714;
 
 In re: Pardue,
 
 93-2865 (La.3/11/94), 633 So.2d 150.
 

 In this matter, respondent failed to promptly remit $2,790 to a third-party medical provider and commingled and converted those funds to his own use by placing them in his office account, not a client trust account, and using them for other purposes. Respondent also admitted the factual allegation in the formal charges regarding his failure to return his client’s phone calls about the medical bill. Based on these facts, respondent violated Rules 1.3, 1.4, 1.15(a), 1.15(d), and 8.4(a) of the Rules of Professional Conduct.
 

 Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct.
 
 Louisiana State Bar Ass’n v. Reis,
 
 513 So.2d 1173 (La.1987).g The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances.
 
 Louisiana State Bar Ass’n v. Whittington,
 
 459 So.2d 520 (La.1984).
 

 Both the hearing committee and the disciplinary board found respondent acted negligently. The record supports this finding. He violated duties owed to his clients and the public. His conduct caused
 
 *203
 
 potential harm to his client and actual harm to Chiropractic USA in depriving the medical provider of funds for an extended period of time. The ABA’s
 
 Standards for Imposing Latoyer Sanctions
 
 establishes suspension as the baseline sanction.
 

 Aggravating factors consist of prior disciplinary offenses and substantial experience in the practice of law. There are numerous mitigating factors, including personal or emotional problems,
 
 [4]
 
 full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, character or reputation, and remorse.
 

 Considering all these circumstances, we find the sanction recommended by the disciplinary board is appropriate. Accordingly, we will suspend respondent from the practice of law for six months, fully deferred, subject to a one-year period of supervised probation. During the period of probation, respondent shall enroll in and attend the Trust Accounting School offered by the Louisiana State Bar Association’s Practice Assistance and Improvement Committee.
 

 DECREE
 

 Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that James Spruel, Jr., | gLouisiana Bar Roll number 12352, be and he hereby is suspended from the practice of law for a period of six months. This suspension shall be deferred in its entirety, subject to respondent’s successful completion of a one-year period of supervised probation governed by the conditions set forth in this opinion. The probationary period shall commence from the date respondent, the ODC, and the probation monitor execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
 

 [1]
 

 . The ODC’s investigator made numerous attempts to serve Ms. Joseph with a subpoena to testify at the hearing; however, those efforts were unsuccessful.
 

 [2]
 

 . In July 1997, respondent was admonished by the disciplinary board for violating Rule 1.5 (fee arrangements) of the Rules of Professional Conduct. In November 2003, respondent was admonished, conditioned upon his successful completion of Ethics School, for neglecting a legal matter in violation of Rule 1.3 of the Rules of Professional Conduct.
 

 [3]
 

 .The committee cited
 
 In re: Broussard,
 
 02-1670 (La.9/30/02), 827 So.2d 1133, wherein an attorney failed to disburse client funds for over a year, commingled and converted client funds, and engaged in a conflict of interest. Based on that misconduct, this court accepted a petition for consent discipline imposing upon the attorney a fully deferred six-month suspension, subject to one year of supervised probation with conditions.
 

 [4]
 

 . Respondent’s misconduct in not timely paying Chiropractic USA was directly caused by his personal problems and his additional school board duties following Hurricane Rita.