950 So.2d 636 (2007)
In re Jasper N. PHARR.
No. 2006-B-2283.
Supreme Court of Louisiana.
February 22, 2007.
*637 Charles Bennett Plattsmier, G. Fred Ours, Baton Rouge, for Applicant.
*638 Shelia Carol Myers, Jasper Newton Pharr, for Respondent.

ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Jasper N. Pharr, an attorney licensed to practice law in Louisiana.

UNDERLYING FACTS
In August 1991, Mary Ann Johnson retained respondent to assist her in preserving settlement funds she had received in her capacity as the tutrix for her minor son, Perry Johnson ("Perry").[1] According to the employment contract between Ms. Johnson and respondent, the funds were to be placed in a "mortgage certificate and/or note" until Perry reached the age of eighteen on March 18, 2000. The employment contract also established that respondent was acting as Ms. Johnson's attorney in the matter.
Ms. Johnson gave respondent $66,551 of Perry's settlement funds,[2] which he placed in his trust account. Pursuant to the employment contract, respondent charged Ms. Johnson an advance fee of 30% of the funds, or $19,965.30, to place the remaining funds totaling $46,585.70 in a mortgage certificate or note and to guarantee that Ms. Johnson received $425 a month until Perry turned eighteen.
A few days later, respondent arranged for $46,404 of Perry's funds to be loaned to another client, Teryl Mitchell, secured by a note and a mortgage on Ms. Mitchell's home in New Orleans. The note listed an annual interest rate of 14%; however, respondent actually provided the loan to Ms. Mitchell interest-free without Ms. Johnson's authorization.
Respondent paid Ms. Johnson $425 per month until Perry turned eighteen, totaling $44,200. Ms. Mitchell made sporadic payments on the loan totaling $16,234 until she paid off the principal through a refinancing in June 1998. Because of the sporadic nature of Ms. Mitchell's payments, respondent used his own funds to make several of the $425 monthly payments to Ms. Johnson.
Shortly after Perry's eighteenth birthday, he demanded that respondent provide him with an accounting of the $66,551 entrusted to him and pay him the remaining balance. Because of his failure to keep complete records, respondent was unable to provide an accounting. He also informed Perry that the funds were depleted despite the fact that the remaining balance should have been at least $2,385.70. Moreover, on several occasions after Ms. Mitchell's loan was paid through the refinancing and the funds returned to respondent, respondent's trust account balance fell below the balance of Perry's funds that should have been in respondent's possession.[3]
*639 In June 2000, Perry filed a lawsuit against respondent to recover the money due him. Perry Johnson v. Jasper N. Pharr, No.XXXX-XXXXX on the docket of the Civil District Court for the Parish of Orleans. On June 3, 2002, respondent and Perry entered into a consent judgment in the amount of $15,000 plus legal interest from January 1, 2003 until paid. In March 2005, respondent paid Perry $16,245 as partial payment on the judgment. As of April 5, 2005, he still owed Perry $1,049.

DISCIPLINARY PROCEEDINGS
Perry filed a disciplinary complaint against respondent. After investigation, the ODC filed one count of formal charges alleging that respondent's conduct violated Rules 1.1(a) (failure to provide competent representation to a client), 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.5 (charging an excessive fee), 1.15 (safekeeping property of clients or third persons), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct. Respondent answered the formal charges and denied any misconduct.

Hearing Committee Recommendation
This matter proceeded to a formal hearing before the hearing committee. Both parties introduced documentary evidence. The ODC called Perry Johnson, Thomas Lussen, Mary Ann Johnson, and its auditor, Ronald White, to testify in person before the committee. Respondent did not testify at the hearing.
At the conclusion of the hearing, the committee issued its report in which it determined that respondent violated Rules 1.1(a), 1.3, 1.5, 1.15, and 8.4(c) of the Rules of Professional Conduct. The committee found that respondent failed to provide competent representation to his client because he did not properly invest the funds entrusted to him in that he failed to charge or collect interest on the interest-bearing note, to his client's detriment. The committee also found that respondent failed to provide diligent representation because he made an imprudent investment on behalf of his client, failed to collect the interest on the note, and failed to act with the diligence necessary to preserve his client's funds. It further found respondent charged an excessive fee for arranging to loan his client's funds to another individual, secured by an interest-free mortgage note, and provided no other legal services to justify his fee. It noted respondent failed to maintain complete records of the funds collected from and disbursed to his client and failed to render a prompt and appropriate accounting upon request. Finally, the committee determined that respondent failed to inform his client that he was using his client's funds to make an interest-free loan to a third party who was a credit risk and misappropriated or converted his client's funds.
As aggravating factors, the committee found prior disciplinary offenses,[4] a dishonest or selfish motive, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, substantial experience in the practice of law (admitted 1974), and indifference to making restitution. The committee found no mitigating factors are present.
*640 Considering these factors, the committee recommended that respondent be disbarred. The committee also recommended that respondent participate in the Louisiana State Bar Association's fee dispute resolution program and pay all costs and expenses of the disciplinary proceedings.
Respondent objected to the hearing committee's recommendation.

Disciplinary Board Recommendation
After review, the disciplinary board adopted the hearing committee's factual findings and application of the Rules of Professional Conduct. The board determined that respondent intentionally violated duties owed to his clients, the public, and as a professional, causing actual harm. The board accepted the aggravating factors found by the committee and agreed that no mitigating factors are present.
Under the circumstances of this case, in particular respondent's conversion of client funds and failure to make timely restitution, the board recommended that respondent be disbarred. The board further recommended that respondent participate in the Louisiana State Bar Association's fee dispute resolution program and pay all costs and expenses of the disciplinary proceedings.
Respondent filed an objection to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Our review of the record reveals that respondent acted incompetently when he invested Perry's funds in a mortgage note with a 14% interest rate, then failed to collect any interest.[5] The only additional service respondent provided to Ms. Johnson was issuing checks disbursing $425 a month to her. For these limited services, respondent charged Ms. Johnson more than $19,000 as his fee, which is clearly excessive. Additionally, respondent converted a portion of Perry's funds by allowing his trust account balance to fall below the amount he should have been holding for Perry after Ms. Mitchell paid off the loan through a refinancing and by failing to turn over the balance of the funds when Perry turned eighteen. Finally, respondent failed to maintain complete financial records of Perry's funds, which inhibited the ODC's investigation, and failed to provide his client or Perry with an accounting.
Having found evidence of professional misconduct, we now turn to a determination *641 of the appropriate sanction for respondent's actions. In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
The aggravating factors present are prior disciplinary offenses, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, and substantial experience in the practice of law. In mitigation, we find respondent has demonstrated he has good character and reputation. Additionally, we note his prior offenses are remote in time.
Considering the totality of the record, we believe respondent's actions were the product of incompetence and fiscal mismanagement rather than any intentional desire to harm the interests of his clients. While respondent's state of mind is not a defense to the misconduct, it is a relevant factor in determining an appropriate sanction. See Louisiana State Bar Ass'n v. Hinrichs, 486 So.2d 116, 122 (La. 1986) ("That Hinrichs did not intend the disastrous consequences to his client or did not act in bad faith is not a defense, but may be considered in determining an appropriate sanction."). We also find it significant that respondent and Perry entered into a consent judgment whereby respondent agreed to compensate Perry for the harm he sustained as a result of respondent's misconduct.
Under these circumstances, we conclude that imposition of the sanction of disbarment would be unduly punitive. Instead, we find the appropriate sanction for respondent's misconduct is a three-year suspension from the practice of law, with all but one year and one day deferred. Respondent is also ordered to pay all sums remaining due and owing to Perry Johnson.

DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Jasper N. Pharr, Louisiana Bar Roll number 9949, be and he hereby is suspended from the practice of law for a period of three years. It is further ordered that all but one year and one day of the suspension shall be deferred. Respondent shall pay all sums remaining due and owing to Perry Johnson. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
NOTES
[1] The funds represented the proceeds of a court-approved settlement of Perry's claim in a lead-based paint lawsuit. Respondent did not handle the lawsuit for Perry or Ms. Johnson.
[2] Respondent disputes that he received this amount. Instead, he claims he received between $60,000 and $66,000 from Ms. Johnson.
[3] Ms. Mitchell paid off the loan in June 1998. The ODC's auditor, Ronald White, indicated that on October 27, 1998, respondent's trust account balance fell to $3,561.34 when he still had $9,610.70 of Perry's funds in his possession. Over the next month, the balance in respondent's trust account went up and down, but by November 19, 1998, the balance fell to $8,964.58 when respondent still had $9,185.70 of Perry's funds. Thereafter, the balance stayed below the amount of Perry's funds still in respondent's possession until the account was closed in August 1999. At that time, respondent should have been holding $5,360.70 of Perry's funds.
[4] Respondent received a private reprimand in 1985 for neglecting a legal matter and a private reprimand in 1989 for sending out direct mail advertisements.
[5] Respondent argues that Ms. Johnson did not turn over Perry's funds to him for investment purposes but to prevent her from spending the money all at once. However, the employment contract indicates that he would place the funds in a "mortgage certificate and/or note," which he did. Any reasonable person would assume this to be an investment that would earn interest.