597 So.2d 444 (1992)
LOUISIANA STATE BAR ASSOCIATION
v.
Richard J. BOUTALL.
No. 91 B 2692.
Supreme Court of Louisiana.
April 20, 1992.
Rehearing Denied June 30, 1992.
WATSON, Justice.
The Disciplinary Board of the Louisiana State Bar Association charged Richard J. Boutall with violating the Rules of Professional Conduct. After taking evidence, the Hearing Committee found Boutall guilty of misconduct and recommended disbarment. The Disciplinary Board concurred in the Committee's findings and recommendation.

FACTS
Richard J. Boutall and Glenn R. Abel were founders and shareholders of Westend Amusement Corporation. In 1982, Westend Development Company sold Westend Amusement a Jefferson Parish building. Westend Amusement, Boutall, Abel, and two other shareholders (Boutall's cousins) executed a promissory note secured by a mortgage on the building. Since Abel resided in California, he participated in the purchase by giving Boutall a power of attorney.
When the note became delinquent, Westend Development foreclosed. The building was sold at auction, leaving a deficiency on the note. Westend Development filed suit to recover the deficiency from the makers of the note. Boutall answered the petition on behalf of all defendants. After trial, Westend Development received a judgment for $180,790.97, plus interest. Boutall appealed without success.
Once the judgment became final, Westend Development attempted to enforce the judgment against Abel in California. Abel contended that the Louisiana court lacked personal jurisdiction. He alleged that he *445 had not been properly served and Boutall had not been authorized to represent him. At Abel's request, Boutall executed an affidavit stating that he had not represented Abel, had not been authorized to represent Abel and had not been compensated by Abel. However, the Louisiana judgment was made executory in California.
Because of Boutall's affidavit, Westend Development's attorney filed a complaint with the Bar Association's Committee on Professional Responsibility. Boutall was charged with violating Rules of Professional Conduct 1.2(c), 3.3(a)(b), 3.4(b), 4.1, 4.4 and 8.4(a)(b)(c)(d).
Before the Hearing Committee, Boutall stated that he had primarily represented himself and his cousins. He had felt obligated to represent all the defendants, including Abel. Abel was an old friend from law school. Boutall had advised Abel about the proceedings and had sent him copies of the pleadings.
Boutall admitted the affidavit was incorrect in stating that Boutall did not represent Abel, but he did not prepare the affidavit. Boutall thought the language might have been altered. Boutall had agreed to attest only that: (1) Abel had never specifically authorized Boutall's representation; and (2) Abel had never paid Boutall for his work.
The Hearing Committee concluded that Boutall executed the affidavit to assist Abel in avoiding enforcement of the deficiency judgment. Boutall indicated to the Disciplinary Board that he had a substance abuse problem but gave no evidence to support this allegation. Concluding that Boutall's conduct violated Rules 1.2(c), 3.3(a)(b), 3.4(b), and 4.1, the Disciplinary Board recommended disbarment.

LAW
In disciplinary matters, this Court functions as trier of fact and conducts an independent review to determine if the charged misconduct is proven by clear and convincing evidence. Louisiana State Bar Ass'n v. Lindsay, 553 So.2d 807 (La.1989); Louisiana State Bar Ass'n v. McGovern, 481 So.2d 574 (La.1986); La.Sup.Ct.R. 19, § 18(C). Although the Hearing Committee and the Disciplinary Board make recommendations, exclusive jurisdiction and sole responsibility for imposing appropriate discipline remains with this Court. Mire v. City of Lake Charles, 540 So.2d 950 (La. 1989); McGovern; La. Const. art. 5, § 5(B).
Attorney discipline protects the public and the profession by deterring attorney misconduct. Louisiana State Bar Ass'n v. Guidry, 571 So.2d 161 (La.1990); Louisiana State Bar Ass'n v. Dumaine, 550 So.2d 1197 (La.1989). Appropriate discipline requires consideration of the ethical violation, the attorney's mental state, the severity of the resulting injury, and any other mitigating or aggravating factors. Louisiana State Bar Ass'n v. Harrington, 585 So.2d 514 (La.1990); Louisiana State Bar Ass'n v. Wilkinson, 562 So.2d 902 (La.1990); La.Sup.Ct.R. 19, § 10(C).
Although Abel had knowledge of Boutall's representation, there is no evidence that he ratified Boutall's employment. See Wadsworth v. Alexius, 234 La. 187, 99 So.2d 77 (1958).

CONCLUSION
While Boutall admitted that he had represented Abel, he executed a contrary affidavit. Even if Boutall's representation was unauthorized and uncompensated, the affidavit was false. Boutall violated Rules 4.1(a) and 8.4(c) by making a false affidavit. Executing a false affidavit is a serious breach of ethics, which directly affects the practice of law and "calls into question his ability to discharge his professional duties." (R. 33).
The Committee and the Board also found that Boutall assisted his client, Abel, in fraudulent conduct, violating Rule 1.2(c). However, there is no clear and convincing proof that Abel undertook fraudulent conduct. Also, the evidence does not clearly establish that Abel thought he and Boutall had a lawyer/client relationship. See Wadsworth. Thus, a violation of Rule 1.2(c) was not proven.
Boutall was also found in violation of Rule 3.3 which deals with candor toward a *446 tribunal. However, there is no evidence that Boutall knew his affidavit would be presented to a "tribunal." Similarly, Boutall's affidavit was not shown to have been executed as evidence in a particular matter. Violations of Rules 3.3 and 3.4(b) were not proven.
Thus, Boutall's misconduct, while extremely serious, only violated Rules 4.1(a) and 8.4(c). The other allegations were not proven by clear and convincing evidence.
A substance abuse problem can be a significant mitigating factor. Louisiana State Bar Ass'n v. Longenecker, 538 So.2d 156 (La.1988); Louisiana State Bar Ass'n v. Stewart, 500 So.2d 360 (La.1987). However, there is no evidence supporting this mitigating circumstance.
While Boutall's affidavit delayed the California proceedings to the detriment of Westend Development, the final result was unaffected. Boutall did not personally profit from his false affidavit and apparently acted from a misguided sense of loyalty and friendship. These are mitigating factors.
Boutall's actions are aggravated by a previous reprimand and suspension for nine months. See Louisiana State Bar Ass'n v. Boutall, 532 So.2d 1151 (La.1988).
Considering all of the mitigating and aggravating factors, the appropriate sanction is a suspension of eighteen months.

DECREE
Richard J. Boutall is suspended from the practice of law for a period of eighteen months from the date this opinion is final. All costs are assessed to Richard J. Boutall.
LEMMON, J., concurs and assigns reasons.
LEMMON, Justice, concurring.
The issue is this case is whether respondent, when he executed the affidavit prepared by Abel or his attorney, intended by dishonesty and lack of candor to mislead the California court so as to warrant the penalty of disbarment recommended by the Hearing Committee and the Disciplinary Board. The affidavit provided as follows:
1) He is the Attorney of record who argued the case in West End Development Corp. v. West End Amusement Corp. et al., Docket # 282-746, 24th Judicial District Court Parish of Jefferson.
2) To his knowledge and belief that he did not represent Glen R. Able [sic] in said lawsuit and this was indicated to opposing Counsel.
3) He has never been engaged by Glen R. Abel to represent him in the above-referenced Lawsuit nor has he ever received any compensation from Mr. Able [sic] in regard to said Lawsuit. (emphasis added).
The emphasized language of the affidavit was clearly incorrect when the word "represent" is viewed literally. However, everyone knew the literal language was incorrect. Because of respondent's signature on numerous pleadings in the litigation in which he asserted that he undertook to represent Abel, there was no chance that the language would ever mislead a California judge or anyone else. I cannot reasonably conclude that respondent, by his careless and imprudent execution of the affidavit containing that language, had a dishonest or deceitful motive.
The affidavit can be reasonably interpreted only as an assertion that respondent did not represent Abel with Abel's authorization. There is no other logical reason for the affidavit than to assist in framing the legal issue of whether personal jurisdiction resulted from this unauthorized appearance. The last paragraph of the affidavit demonstrates the true import of the document. Abel was going to present the personal jurisdiction issue, with or without the affidavit, in an effort to block execution of the judgment in California (and to seek nullity of the judgment in Louisiana), and the affidavit certainly would not be determinative of the jurisdiction issue.[1]
The court, in determining the penalty to be imposed in a disciplinary proceeding, *447 should consider the duty violated, the lawyer's mental state, the actual or potential injury caused by the misconduct, and the existence of aggravating or mitigating factors. Standards for Imposing Lawyer Sanctions § 3.0 (1986).
Here, respondent owed a duty of candor to the California court, and he violated this duty by executing an inaccurate affidavit. Respondent clearly should have been more careful and prudent than to execute the affidavit in the form presented to him. Because of carelessness (or perhaps because of his asserted substance abuse), he did not revise the affidavit to focus on the accurate factual assertion that Abel never specifically authorized or paid for the representation.[2] But the circumstances under which respondent executed the affidavit do not fairly support a finding of a dishonest motive or of a reasonable expectation of deception.
Moreover, the creditor suffered no true detriment (or even delay) from respondent's execution of the affidavit. Abel certainly would have resisted execution of the judgment in California, with or without the affidavit, on the basis that respondent's appearance for him was not authorized. Of additional significance, respondent gained absolutely nothing personally from executing the affidavit.
The aggravating factors of the prior disciplinary sanctions, along with the pattern of continuing carelessness and neglect, justify the discipline imposed by the majority. But the absence of dishonesty and of evil or selfish motive in the execution of the affidavit require reduction of the sanction recommended to this court.
NOTES
[1] It is perhaps a close legal question whether respondent's unauthorized appearance for Abel in the foreclosure proceeding provided personal jurisdiction for the Louisiana court to render a valid money judgment against the nonresident that was entitled to full faith and credit in California. Arguably Abel's unprotesting acceptance of that unauthorized representation constitutes ratification which tips the scales in favor of a finding of jurisdiction.

That legal question apparently is squarely presented in an action for nullity of judgment pending in the district court. A preliminary ruling in that action was recently presented to this court for review. See Westend Development Co. v. Westend Amusement Corp., 596 So.2d 210 (La.1992).
[2] That assertion was the factual basis for Abel's attempt to block execution of the judgment in California and is the factual basis of the nullity action pending in Louisiana.