833 So.2d 916 (2002)
In re Gordon L. HACKMAN.
No. 2002-B-1692.
Supreme Court of Louisiana.
December 4, 2002.
Rehearing Denied January 24, 2003.
*917 Charles B. Plattsmier, G. Fred Ours, Baton Rouge, Counsel for Applicant.
Richard C. Stanley, William M. Ross, New Orleans, Gordon L. Hackman, Boutte, Counsel for Respondent.
PER CURIAM.
This disciplinary proceeding arises from one count of formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Gordon L. Hackman, an attorney licensed to practice law in Louisiana.

UNDERLYING FACTS
Between November 1, 1997, and June 30, 1998, respondent commingled and converted $113,272.27 in client and third-party funds from his client trust account. According to respondent's financial records, on June 30, 1998, he had a balance in his client trust account of $50,621.23. However, the account should have had $163,893.50 on deposit stemming from four client settlements held in escrow pending resolution of outstanding medical liens. Without his clients' knowledge and consent, respondent had withdrawn the funds through a series of periodic withdrawals to satisfy his personal financial obligations.
Respondent's office manager confronted respondent when she discovered his mishandling of the client trust account.[1] He immediately terminated her employment. Several weeks later, she filed a complaint with the ODC advising of respondent's misconduct. During the course of the ODC's investigation, respondent took out a bank loan and replenished the trust account, as well as provided restitution to two third-party medical providers.

*918 DISCIPLINARY PROCEEDINGS

Formal Charges
After investigation, the ODC filed one count of formal charges against respondent alleging violations of Rules 1.3 (lack of diligence), 1.4 (failure to communicate), 1.15 (commingling and conversion of client and third-party funds), 8.4(a) (violating or attempting to violate the Rules of Professional Conduct), 8.4(b) (commission of a criminal act adversely reflecting on a lawyer's honesty, trustworthiness, or fitness as a lawyer) and 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation) of the Rules of Professional Conduct.
Respondent filed an answer admitting that he improperly "transferred" $112,953 from his trust account during the period in question. However, in his defense, he alleged he earned $54,000 of the amount in legal fees from two of the client settlements and would have eventually been entitled to this amount after the resolution of his clients' medical liens. As a result, he argued his misconduct essentially constituted a short-term conversion of the remaining funds, which amounted to $58,953.[2]

Formal Hearing
At the formal hearing, respondent testified that he was aware his conversion of funds was improper, but asserted he had no intention to permanently deprive his clients of their funds. In mitigation, respondent noted there was no delay in disbursing settlement payments to his clients. Further, he pointed out that, in the same year he started to engage in the conversion of client funds, his father was diagnosed with prostate cancer. Respondent alleged this prompted him to personally undergo prostate specific antigen testing, which indicated an elevated level of antigens (a contributing factor to cancer). Respondent claimed the findings caused him to excessively dwell upon his own mortality.
Respondent presented the testimony of Dr. Barbara Elizabeth McDermott, a board-certified psychiatrist. Dr. McDermott testified her structural assessment of respondent indicated he did not adjust to stressful situations very well, a condition which could make him have lapses in judgment, but would not have caused him to deceive others or lie. Dr. Luan Oprea, respondent's mental health consultant, testified she first saw respondent in July 1998, immediately following the disclosure of his ethical and professional problems. She stated respondent attended a rehabilitation program, and his mental health would improve through self-monitoring.
Finally, respondent presented the testimony of Harvey Lewis, an attorney who handled several cases with respondent. Mr. Lewis testified that during the time of respondent's misconduct, he noticed a marked change for the worse in respondent's demeanor or personality and conjectured respondent may have suffered from psychological problems which may have impaired his ability to function. However, Mr. Lewis stated he did not have any reservations about respondent's morals, ethics, or legal skills relative to respondent's continued practice of law.

Recommendation of the Hearing Committee
The committee concluded respondent violated Rules 1.15 (commingling and conversion *919 of client and third-party funds) and 8.4(a) (violating or attempting to violate the Rules of Professional Conduct) by invading his trust account at a time when he did not have a right to do so. Further, relying on respondent's own admission that his conduct was dishonest, the committee determined respondent violated Rule 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation). As such, the committee found no violations of Rules 1.3 (lack of diligence), 1.4 (failure to communicate) and 8.4(b) (commission of a criminal act adversely reflecting on a lawyer's honesty, trustworthiness, or fitness as a lawyer).
Relying on Standards 4.11 and 4.12 of the ABA's Standards for Imposing Lawyer Sanctions,[3] the committee found the baseline sanction for respondent's misconduct ranged from disbarment to suspension. It recognized dishonest motive and the substantial experience in the practice of law (admitted 30 years at the time of the misconduct) as aggravating factors. As mitigating factors, the committee identified respondent's personal or emotional problems, timely good faith effort to rectify the consequences of his misconduct, cooperative attitude toward the proceedings, good character or reputation, mental disability, remorse and remoteness of prior offenses.[4]
Based on these findings, the committee recommended that respondent be suspended from the practice of law for a period of eighteen months, with six months deferred, followed by a three-year period of supervised probation. It further proposed respondent be required to post a $100,000 fidelity bond.

Disciplinary Board Recommendation
The disciplinary board concurred in the findings of the hearing committee relative to the professional violations. It noted respondent's conduct was both knowing and grossly negligent. Although it concluded the potential for harm to respondent's clients was great, it also pointed out that no client had suffered any actual harm. The board adopted the ABA Standards and mitigating factors cited by the committee, but found no aggravating factors to be present.
Relying on jurisprudence from this court, the board recommended respondent be suspended from the practice of law for a period of eighteen months, with all but one year and one day deferred, followed by supervised probation for three years and post a $100,000 fidelity bond in favor of his clients for three years.
Both the ODC and respondent filed an objection to the board's findings and recommendation. Accordingly, the matter was set on the court's docket for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this *920 court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316, p. 8 (La.11/30/94), 646 So.2d 343, 348; Louisiana State Bar Association v. Boutall, 597 So.2d 444, 445 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401, p. 4 (La.11/25/96), 683 So.2d 714, 717; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Respondent does not dispute that he converted client funds to his own use. Therefore, we find this charge is proven by clear and convincing evidence.[5] Accordingly, we now turn to a discussion of the appropriate sanction.
The purpose of disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain the appropriate standards of professional conduct, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the standards of the profession. In re: Vaughan, 00-1892, p. 4 (La.10/27/00), 772 So.2d 87, 89; In re: Lain, 00-0148, p. 7 (La.5/26/00), 760 So.2d 1152, 1156; Louisiana State Bar Association v. Levy, 400 So.2d 1355, 1358 (La. 1981). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. In re: Redd, 95-1472, p. 2 (La.9/15/95), 660 So.2d 839, 840; Louisiana State Bar Association v. Whittington, 459 So.2d 520, 524 (La.1984).
In the landmark case of Louisiana State Bar Association v. Hinrichs, 486 So.2d 116 (La.1986), we undertook an extensive review of the jurisprudence in conversion cases and set forth some guidelines for imposing sanctions in such cases. In particular, we drew a distinction between those conversion cases which warrant disbarment and those warranting a three year suspension. We explained:
In a typical case of disbarment for violation of DR 9-102 [now Rule 1.15], one or more of the following elements are usually present: the lawyer acts in bad faith and intends a result inconsistent with his client's interest; the lawyer commits forgery or other fraudulent acts in connection with the violation; the magnitude or the duration of the deprivation is extensive; the magnitude of the damage or risk of damage, expense and inconvenience caused the client is great; the lawyer either fails to make full restitution or does so tardily after extended pressure of disciplinary or legal proceedings.
A three year suspension from practice typically results in cases involving similar but less aggravated factors. In such cases the lawyer is guilty of at least a high degree of negligence in causing his client's funds to be withdrawn or retained in violation of the disciplinary rule. He usually does not commit other fraudulent acts in connection therewith. The attorney usually benefits from the infraction but, in contrast with disbarment cases, the client may not be greatly harmed or exposed to great risk of harm. The attorney fully reimburses or pays his client the funds due without the necessity of extensive disciplinary or legal proceedings. *921 Hinrichs, 486 So.2d at 122-123. (Citations omitted.)
Applying those guidelines to the instant case, we find the facts of this case involve most of the factors contained in the range of a three-year suspension. Respondent acted improperly in his treatment of his clients' funds, but no other fraudulent acts were committed in connection with the conversion. Respondent benefitted from the infraction because he used the funds in his trust account to pay his office expenses. There was some harm to respondent's clients as well as the third party medical providers, as they were deprived of their funds for a period of time. However, the harm was not great, and respondent ultimately made full restitution.
As aggravating factors, we recognize respondent's dishonest or selfish motive, his substantial experience in the practice of law and his prior disciplinary record.[6] As mitigating factors, we note respondent's personal and emotional problems, his payment of restitution, and his good character or reputation. The aggravating and mitigating factors in this case are largely in equipoise and do not justify substantial deviation from the baseline suspension of three years.
We will suspend respondent from the practice of law for a period of thirty months.

DECREE
Upon review of the findings and recommendation of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Gordon L. Hackman be suspended from the practice of law in Louisiana for a period of thirty months. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of the finality of this court's judgment until paid.
NOTES
[1] Although no formal charges were brought regarding this incident, Respondent admitted that he paid the office manager $4,000 after she threatened to turn him in.
[2] Specifically, respondent alleged he earned a total of $54,000 in legal fees in the client matters of Beverly Breaux and Mack Rensberger. As to the Breaux matter, $30,000 in legal fees were not due to respondent until April 1999, approximately sixteen months after his conversion of Ms. Breaux's funds began. Regarding the Rensberger matter, $24,000 in legal fees would not be due to respondent until November 1999, almost two years following the conversion of Mr. Rensberger's funds.
[3] Standard 4.11 provides disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client. Standard 4.12 provides suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.
[4] Respondent's prior disciplinary record consists of three private reprimands: File No. 5457, 11/29/78, private reprimand stemming from a conflict of interest in a legal representation; File No. 5080-A, 9/14/79, formal private reprimand involving a real estate transaction that lacked clear title; and File No. 8567, 4/13/87, formal private reprimand involved a failure to return an unearned fee. Respondent admitted other complaints had been filed against him.
[5] The hearing committee found no support for the charges alleging failure to communicate, lack of diligence or commission of a criminal act. We see no error in this finding.
[6] However, like the committee, we acknowledge respondent's offenses are fairly remote in time.