983 So.2d 1250 (2008)
In re Katherine WHEELER.
No. 2008-B-0616.
Supreme Court of Louisiana.
June 20, 2008.

*1251 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Katherine Wheeler, an attorney licensed to practice law in Louisiana.

UNDERLYING FACTS
In January 2001, Key Home Health Care hired respondent to negotiate a reduction in the payments it was making in reimbursements to Medicare. Key Home Health Care paid respondent a $5,000 advanced fee.[1]
Although respondent worked on the matter, she never obtained the reduction. In December 2002, through its new attorney Sherry Powell Crain, Key Home Health Care informed respondent that her services were no longer needed as it no longer wished to have the Medicare reimbursement payments reduced. Ms. Crain also requested an accounting on behalf of her client. Respondent did not provide an accounting but did inform Ms. Crain that she was mailing an $1,800 refund of the advanced fee to Key Home Health Care. This refund was never received.
In July 2003, Ms. Crain filed a disciplinary complaint against respondent with the ODC. Respondent failed to respond to the complaint in writing and failed to provide the ODC with promised documents.

DISCIPLINARY PROCEEDINGS
In July 2005, the ODC filed one count of formal charges against respondent, alleging that her conduct as set forth above violated Rules 1.4 (failure to communicate with a client), 1.5(f)(3) (failure to provide an accounting), 1.5(f)(5) (failure to refund an unearned fee), 1.15(a)(c) (safekeeping property of clients or third persons), 1.16(d) (obligations upon termination of the representation), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.
Respondent was served with the formal charges but initially failed to answer. Accordingly, the factual allegations contained therein were deemed admitted and proven *1252 by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held at this time, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. While the ODC filed its submission on sanctions, respondent filed nothing for the hearing committee's consideration. On February 14, 2006, the hearing committee filed its report, recommending that respondent be suspended from the practice of law for one year and one day and be required to make restitution to Key Home Health Care.
On April 27, 2006, respondent appeared for oral argument before the disciplinary board, wherein she requested that the board remand the case for a hearing because she had experienced health problems which had prevented her from participating in the proceedings thus far. Although the ODC opposed the remand and respondent requested a number of extensions to provide supporting documentation, the board ultimately granted respondent's request and remanded the matter. The board also ordered respondent to file an answer to the formal charges, which she did on November 29, 2006.[2]

Formal Hearing
This matter then proceeded to a formal hearing on the merits. Respondent was present but was not represented by counsel.
The ODC called Ms. Crain to testify before the committee.[3] Respondent called three witnesses, including her treating physician and a former employee of Key Home Health Care, to testify before the committee. She also testified on her own behalf, explaining that between 2002 and 2004 she had problems with kidney stones and depression. She did not have health insurance, so she was only able to get medical treatment for her condition when she could afford it. She was having these problems when she talked to Ms. Crain in 2003. She also indicated that she could not pay her office rent during this time, and thus, the staff provided as part of the rent would not send out her mail or give her the mail she received there. She was too sick to go to her office and work so she would routinely return retainer checks to clients without depositing them into her trust account. As such, she thought she accidentally told Ms. Crain she would send her $1,800, believing Ms. Crain was a different client she was returning money to. Finally, she stated that she did not remember who told her to stop working on the Medicare matter, only that she did no more work on it after May 2002.

Hearing Committee Recommendation
After considering the testimony and evidence presented at the hearing, the hearing committee made the following factual findings:
1. Communication between respondent and Key Home Health Care deteriorated *1253 to the degree that it was unclear whether they comfortably knew of their relationship;
2. Respondent failed to reasonably and timely render a periodic accounting to Key Home Health Care and failed to timely provide Ms. Crain with the requested accounting;
3. There was no showing that respondent did not keep Key Home Health Care's advanced fee in a trust account until the funds were exhausted by her periodic billing;
4. Respondent failed to timely facilitate the termination of her representation by keeping Key Home Health Care reasonably informed as to her cessation of negotiations with Medicare;
5. Respondent failed to fully cooperate with the ODC in its investigation;
6. Respondent suffered from and is still suffering from depression; and
7. Respondent is presently employed by the Attorney General's Office, and she seems to be benefitting from the safety net of this employment.
Based on these findings, the committee determined that respondent violated Rules 1.4, 1.5(f)(3), 1.16(d), and 8.1(c) of the Rules of Professional Conduct. The committee also determined that respondent did not violate Rules 1.5(f)(5), 1.15, 8.4(b), and 8.4(c) of the Rules of Professional Conduct.
The committee determined that the baseline sanction for respondent's misconduct is a suspension from the practice of law for one year and one day. As an aggravating factor, the committee recognized respondent's prior disciplinary offenses.[4] In mitigation, the committee recognized the absence of a dishonest or selfish motive and personal or emotional problems.
Under these circumstances, the committee recommended that respondent be suspended from the practice of law for one year and one day, fully deferred, subject to two years of probation and a three-year contract with the Lawyer's Assistance Program (LAP). The committee further recommended that respondent notify the disciplinary board within thirty days if she leaves the Attorney General's Office to return to private practice, and that her failure to do so should result in the imposition of the deferred suspension.
Neither respondent nor the ODC filed an objection to the hearing committee's recommendation.

Disciplinary Board Recommendation
After review, the disciplinary board determined that the hearing committee's factual findings are not manifestly erroneous and adopted same. Based on these facts, the board found the committee correctly determined that respondent's violations of the Rules of Professional Conduct were limited to Rules 1.4, 1.5(f)(3), 1.16(d), and 8.1(c).
The board determined that respondent knowingly violated duties owed to her client and to the legal profession. She did not cause significant injury to her client, but she did injure the disciplinary system through her initial failure to cooperate. The board determined that the applicable *1254 baseline sanction is a suspension for one year and one day.
As aggravating factors, the board found prior disciplinary offenses, a pattern of misconduct, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, and substantial experience in the practice of law (admitted 1981). The only mitigating factor the board found was personal or emotional problems.
After further considering this court's prior jurisprudence regarding similar misconduct,[5] the board recommended that respondent be suspended from the practice of law for one year and one day, fully deferred, subject to a one year and one day period of unsupervised probation and a three-year LAP contract. The board also recommended that respondent's practice be limited to governmental service or a supervised practice for three years.
Neither respondent nor the ODC filed an objection to the disciplinary board's recommendation. However, they did file in this court a joint motion to amend the proposed probation terms without the necessity of briefs or oral argument. In the motion, the parties requested that the period of respondent's probation coincide with a standard five-year LAP contract, which should include the following conditions:
1. Respondent shall maintain ongoing psychiatric or other appropriate medical care and treatment with a frequency determined by the LAP executive director in consult with respondent's physician;
2. Respondent's health care provider shall submit regular reports to the LAP director with copies to the ODC; and
3. Respondent shall report any change in her employment status to the LAP executive director within thirty days, and the LAP executive director shall evaluate the effect of the employment change upon respondent's recovery and health and communicate any concerns to the ODC for appropriate action.

DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
While there is no dispute about the work respondent performed on behalf of Key Home Health Care, the facts reveal *1255 that respondent failed to adequately communicate with her client, especially toward the end of the representation. When Ms. Crain, Key Home Health Care's new attorney, informed respondent that her services were no longer needed, respondent failed to provide the requested accounting. When Ms. Crain filed a disciplinary complaint against respondent with the ODC, respondent failed to cooperate in the ODC's investigation. From the record, it is clear that respondent violated Rules 1.4, 1.5(f)(3), 1.16(d), and 8.1(c) of the Rules of Professional Conduct.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
Respondent has knowingly violated duties owed to her client and the legal profession. She caused injury to her client and the disciplinary system. The baseline sanction for this type of misconduct is a period of suspension.
Aggravating factors include prior disciplinary offenses and substantial experience in the practice of law. In mitigation, we find the absence of a dishonest or selfish motive and respondent's personal or emotional problems, which appear to be the main cause of her misconduct. Considering this fact, as well as respondent's willingness to enter into a five-year LAP contract, we agree with the disciplinary board that a deferred suspension is appropriate, subject to the modified probationary terms proposed by the parties.
Accordingly, we will modify the disciplinary board's recommended sanction as requested by respondent and the ODC in their joint motion to this court and suspend respondent from the practice of law for one year and one day, fully deferred, subject to five years of probation, with the conditions set forth in said motion, to coincide with a five-year LAP contract.[6]

DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Katherine Wheeler, Louisiana Bar Roll number 13401, be and she hereby is suspended from the practice of law for a period of one year and one day. It is further ordered that the suspension shall be deferred in its entirety and respondent shall be placed on probation for five years, subject to the conditions set forth in the joint motion filed in this court by respondent and the ODC, said probation to coincide with a five-year contract with the Lawyer's Assistance Program. *1256 Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
JOHNSON, J., dissents and assigns reasons.
JOHNSON, J., dissents and assigns reasons:
Respondent was charged with violating Rules 1.4 (failure to communicate with a client); 1.5(f)(3) (failure to provide an accounting); 1.5(f)(5) (failure to refund an unearned fee); 1.15(a)(c) (safekeeping property of clients or third persons); 1.16(d) (obligations upon termination of the representation); 8.1(c) (failure to cooperate with the ODC in its investigation); 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer); and 8.4(c) (engaging in conduct involving dishonest, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct. I am of the opinion that respondent should have received an actual period of suspension. Our jurisprudence includes many cases involving instances of failure to communicate with clients, failure to provide an accounting, and failure to cooperate with the ODC in its investigations, where this Court has imposed sanctions ranging from suspensions to disbarment.
In In re Ramsey, XXXX-XXXX (La.3/16/07), 951 So.2d 1077, this Court held that actual suspension for year and a day was warranted for similar conduct. In In re: Randolph, 05-0125 (La.6/3/05), 905 So.2d 1069, this Court imposed a suspension of one year and one day where the attorney failed to communicate with clients, failed to account for and/or refund unearned fees, failed to return client files, and failed to cooperate with the ODC. Also, in In re: Szuba, 04-1571 (La.2/4/05), 896 So.2d 976, this Court imposed a one year and one day suspension on an attorney who was practicing law while ineligible. In none of these instances was the entire suspension deferred.
More importantly, the record does not indicate that Ms. Wheeler made restitution of the $1,800 unearned fees. Ms. Wheeler maintains that she accidentally told Key Home Health Care, her client, she would refund this amount. Nonetheless, Ms. Wheeler failed to provide an accounting of how the client's $5,000 advanced fee was spent. This action warrants a period of actual suspension.
Considering the record as a whole, in my view, actual suspension from the practice of law for a period of at least six months is the appropriate sanction for respondent's misconduct.
NOTES
[1] At the time, respondent was employed with the law firm of Steffes & MacMurdo, which billed Key Home Health Care $610.50. When respondent left Steffes & Macmurdo in April 2001, she took the Key Home Health Care file with her. Steffes & Macmurdo forwarded to her $4,389.50, which represented the remainder of Key Home Health Care's advanced fee.
[2] Attached to respondent's answer were three billing statements she claimed to have sent to Key Home Health Care during her representation. The statements were dated October 31, 2001, November 30, 2001, and May 31, 2001. The last statement indicated that Key Home Health Care owed a balance of $182.77. However, Key Home Health Care claimed it did not receive the statements until it saw a copy of respondent's answer in these disciplinary proceedings.
[3] Ms. Crain testified that respondent informed her of her personal problems and told her she would forward $1,800, which represented the unearned portion of Key Home Health Care's advanced fee. While respondent did stop working on the Medicare matter, she did not forward the $1,800 or provide Ms. Crain with an accounting. She also testified that Key Home Health Care never received the three bills respondent claims she sent.
[4] On September 6, 1984, respondent was privately reprimanded for failing to cooperate with a disciplinary investigation conducted by the Committee on Professional Responsibility. On November 8, 2002, respondent received two admonitions for violating Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.16 (obligations upon termination of the representation), and 8.4(g) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct with respect to two different clients.
[5] See In re: Turnage, 01-1240 (La.6/22/01), 790 So.2d 620 (suspension for one year and one day imposed upon an attorney who failed to communicate with clients, failed to pursue their personal injury case with diligence, failed to return files and funds upon termination of representation, and failed to cooperate in disciplinary investigation), and In re: Schnyder, 05-1463 (La. 1/13/06), 918 So.2d 455 (suspension for one year and one day imposed upon an attorney who failed to communicate with two clients and neglected their legal matters, settled a client's lawsuit without her knowledge or consent, and failed to cooperate in disciplinary investigation).
[6] We recognize that a strict reading of Supreme Court Rule XIX, § 10(A)(3) does not provide for a five-year probationary period. Rather, that rule sets forth a maximum probationary period of four years, allowing the court to impose a two-year probationary period which is subject to renewal for an additional two years. Nonetheless, in cases where a lawyer has entered into a five-year LAP contract, we have imposed a corresponding five-year probationary period to ensure the lawyer fulfills his or her obligations under that program. See In re: Tallon, 08-0179 (La.2/22/08), 974 So.2d 1290; In re: Labourdette, 07-1653 (La.9/19/07), 964 So.2d 927.