VICTORY, J.,
dissents.
hAs noted in the majority opinion, attorney disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). I cannot agree that the alleged violations found by the majority were proven by clear and convincing evidence as required by our rules. See La. S.Ct. Rule XIX, § 18(C). The majority asserts that the allegations against respondents may be divided into two broad categories: (1) allegations involving business transaction and conflict of interest issues, and (2) allegations involving accounting violations. I will address each of these categories separately.

Business Transaction and Conflict of Interest Issues

After reviewing the allegations involving business transaction and conflict of interest issues, the majority finds the respondents violated Rule 1.8(a)[1] and Rule 1.7(b). I will analyze each of these alleged rule violations in turn.
The majority first claims that the respondents have violated Rule 1.8(a). At the time of the alleged misconduct, Rule 1.8(a) of the Rules of Professional Conduct 12provided that an attorney may enter into a business transaction with a client or knowingly acquire an ownership, possesso-ry, security or other pecuniary interest adverse to a client if:
(1) The transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;
(2) The client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and
(3) The client consents in writing thereto.[emphasis added].
The majority concludes that the respondents have violated the above provision because: (1) the business transaction at *1159 issue, the 1996 fee agreement, was not “fair and reasonable,” and (2) the respondents failed to ensure Mr. Palowsky had a “reasonable opportunity to seek the advice of independent counsel.” Both of these findings are in error.
To support its finding that the business transaction in question was not a “fair and reasonable” one, the majority relies solely on the observation that the 1996 fee agreement provided a means for the firm to collect a fee even if no recovery was made in the Gulf States litigation. The majority states, “it is clear the firm used the guaranty of the $950,000 loan as leverage to insert terms into the fee agreement which it perceived to be more favorable.” At p. 1154. It seems that the majority has concluded that the respondents should have either allowed Mr. Palowsky and or his partners to go bankrupt or should have elected to bear the risk of default on a loan of nearly one-million dollars for no additional remuneration. The notion that the firm should have allowed Mr. Palowsky to go bankrupt seems callous, and the implicit argument that the firm should have accepted the risk of default at no additional costs disregards one of the most ancient and well established maxims of human commerce, pthat the chance of profit must go with the risk of disaster. See Justinian’s Institutes § 3.23, at 115 (Peter Birks & Grant McLeod eds., Cornell University Press 1987). It was not unreasonable or unfair for respondents to seek additional security in return for accepting a greater risk.
The majority’s conclusion that respondents did not given Mr. Palowsky a “reasonable opportunity to seek the advice of independent counsel” in violation of Rule 1.8(a)(2) is also in error. To support this conclusion the majority relies solely on an extraordinary interpretation of the version of Rule 1.8(a)(2) which was in effect during the relevant time period. The majority finds that Rule 1.8(a)(2), as it existed at the time of the alleged misconduct,[2] imposed an affirmative duty upon the respondents to urge Mr. Palowsky to have independent counsel review the 1996 fee agreement. This interpretation finds no support in a plain reading of the pertinent text. During the time period at issue, Rule 1.8(a)(2), on its face, simply established a temporal requirement. Under the rule, a client could not be forced to render an immediate, rash decision regarding a transaction with their lawyer. A client had to be given a “reasonable opportunity” or time period[3] to consider the implications of any such arrangement and to “seek” independent counsel. Rule 1.8(a)(2). The 1996 fee agreement was constructed over the course of several months, and Mr. Palowsky was ^presented *1160 with several drafts before signing a final version. There is simply no evidence that Mr. Palowsky was not given a reasonable opportunity to seek the advice of independent counsel.
The majority also concludes that the respondents have violated Rule 1.7(b). At the time of the alleged misconduct, that rule, in pertinent part, stated:
A lawyer shall not represent a client if the representation of that client may be materially limited ... by the lawyer’s own interests, unless:
(1) The lawyer reasonably believes the representation will not be adversely affected; and
(2) The client consents after consultation ....
The majority concludes that the respondents’ law firm’s representation of the client was “materially limited” by their own interests after the respondents’ firm adopted the 1996 fee agreement, thereby violating the above provision. However, this finding seems to stand in stark contradiction to the plain terms of the 1996 fee agreement. By its very design, the fee agreement indicates uncertainty as to which method of remuneration, a percentage of the final judgment in the Gulf States litigation or a percentage of the net profits from the sales of the subdivision lots, would yield the greater monetary award for the firm. Thus, it is illogical to claim that by entering into the 1996 fee agreement the respondents’ firm was inspired to limit their representation or provide a lower quality of representation. Such a reaction would have reduced the firm’s prospects of obtaining the maximum monetary award possible. Rather, under the 1996 fee agreement, the firm was inspired to work diligently to maximize the client’s fortunes as this would, in turn, result in the maximization of the firm’s fortunes.
| ¿Allegations Involving Accounting Violations
After reviewing the allegations involving accounting violations, the majority finds the respondents violated Rule 1.15(b) and 1.16(d) (insofar as this rule requires respondents to furnish an accounting to their client). As the majority bases its findings regarding Rule 1.16(d) completely on the reasons contained in their discussion of Rule 1.15(b), my analysis of the alleged 1.15(b) violation below will, in effect, address the purported violation of both rules.
At the time of the alleged misconduct, Rule 1.15(b) of the Rules of Professional Conduct provided, in pertinent part, as follows:
[A] lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
As the majority opinion notes, after a review of the entire record, both the hearing committee and the disciplinary board rejected the charge that the respondents violated Rule 1.15(b).
The disciplinary board found that “[tjhere is no dispute that Mr. Hart controlled the Palowsky/GSLD files while he was at TGD & L,” and that, “there is no dispute that, as the lawyer for Mr. Palow-sky/GSLD, Mr. Hart was responsible for handling the financial aspects of the Pa-lowsky/GSLD files.” The board also stated that when Mr. Hart left the law firm, “Mr. Hart took all the Palowsky and GSLD files.” Based on these findings, the board noted that “the obligation to provide an accounting rested with Mr. Hart and Mrs. Marchman” and not the respondents.
*1161 The majority finds that the record shows that “means were available to respondents whereby they could have rendered an accounting” despite Mr. Hart’s departure from their law firm. At p. 1156. Specifically, the majority cites |fievidence in the record that the firm retained “numerous financial documents from the Pa-lowsky litigation, such as cancelled checks, records of deposits, and ledger entries.” At p. 1156. Yet, the majority fails to address the very practical observation of the disciplinary board that, “[a]s attorneys for Mr. Palowsky and GSLD, Mr. Hart and Mrs. Marchman were the lawyers that generated the vast majority of the expenses and fees in the bank litigation matter.” Accordingly, “[rjespondents are not in a position to interpret these [financial] documents — that is the obligation of Mr. Palowsky’s attorneys, Mr. Hart and Mrs. Marchman.” Considering the above, the board and the hearing committee found that the respondents tendered a reasonable accounting by providing Mr. Palow-sky with all the financial documents they had concerning monies billed and paid by Mr. Palowsky and GSLD, some 920 pages. I do not find evidence in the record which justifies the majority’s departure from the findings of the hearing committee and the disciplinary board regarding this point.

Conclusion

For the reasons described above, I cannot agree that the alleged violations found by the majority were proven by clear and convincing evidence as required by our rules. Furthermore, even if I was inclined to agree with the majority on those issues, after considering all the facts and circumstances, I would impose the fully deferred suspension recommended by the disciplinary board.

. While the majority states that the respondents have violated Rule 1.8 as a whole, the reasoning set forth to justify this position is obviously specifically rooted in the text found in Rule 1.8(a). The majority finds the business transaction at issue was not "fair and reasonable,” and that the client was not given “a reasonable opportunity” to seek the advice of independent counsel in the transaction. See Rule 1.8(a).

. As the majority notes, it was only after the temporal period at issue in this case that Rule 1.8(a)(2) was amended to provide that “the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction ...." [emphasis added].

. What constitutes a “reasonable opportunity” or period of time under the version of Rule 1.8(a)(2) at issue in this case could well depend upon the unique character of the client. In the present case, the several months dedicated to the drafting of the 1996 fee agreement clearly satisfied the requirements of Rule 1.8(a)(2). As the hearing committee noted, Mr. Palowsky was an “experienced litigator.” The record also indicates that Mr. Palowsky was an experienced real estate developer, a profession which obviously requires the construction and analysis of complex business contracts. Thus, Mr. Palowsky was fully capable of determining whether the advice of independent counsel was necessary and had ample time and ability to act on that assessment during the extended negotiation process preceding the execution of the final 1996 fee agreement.