1 .ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.*
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Louis G. Scott, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS

07-DB-071

The Wesley Matter

In June 2004, DeWanda Perry Wesley purchased a used car from a dealership in the Monroe area, financing the purchase through Crescent Bank and Trust (“Crescent”). The car began having mechanical problems almost immediately after the purchase and stopped functioning altogether in early September 2004. As such, on November 15, 2004, Ms. Wesley consulted respondent about any legal remedies she may have, paying him a $45 consultation fee. In December 2004, respondent met with Ms. Wesley and sent the car dealership a demand letter, demanding repayment of the car’s purchase price. Both respondent and Ms. Wesley understood that respondent would not charge her a fee to handle the matter.
Lin the meantime, Ms. Wesley stopped paying her car note and was sued by Cres *980 cent. On June 1, 2005, the trial court granted summary judgment in favor of Crescent Bank.
At about the same time, Ms. Wesley personally spoke with respondent, and he reminded her that he needed $195 for court costs before he could file anything on her behalf in response to the Crescent lawsuit.[1] On June 16, 2005, Ms. Wesley paid respondent the requested $195. Nevertheless, respondent did not file any pleading on behalf of Ms. Wesley until May 1, 2006; at which time he filed a third-party demand against the car dealership, the salesman, and the extended warranty provider.
In 2007, Crescent obtained a judgment to garnish Ms. Wesley’s wages. When Ms. Wesley had trouble contacting respondent about the garnishment, she filed a disciplinary complaint against him. Thereafter, respondent advised Ms. Wesley to seek new counsel and returned her file.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.2 (scope of the representation), 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5(b) (the scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client), 3.2 (failure to make reasonable efforts to expedite litigation), and 8.4(a) (violation of the Rules of Professional Conduct).

\z08-DB-020

The Davis Matter

The alleged misconduct in the Davis matter stems from two separate representations by respondent of Lester Davis. In the first matter, Mr. Davis hired respondent in late 2003 to handle his mother’s succession. Mr. Davis paid respondent $550 in the succession matter. Respondent filed the necessary pleadings, and a judgment of possession was issued in January 2004. Approximately one year later, Mr. Davis attempted to refinance property he received as part of the succession. However, he discovered the judgment of possession contained a typographical error that placed his deceased mother in possession of the property instead of himself and his sister. Mr. Davis contacted respondent concerning the error, but respondent did not correct it quickly. Therefore, the lender retained attorney Patrick Wright to correct the judgment of possession for a fee of $350, which Mr. Davis paid in February 2005.
In the second matter, on January 3, 2005, Mr. Davis paid respondent $1,050 to represent him on a DWI and careless operation charge. Neither respondent nor Mr. Davis appeared at the arraignment on January 19, 2005. Instead, attorney Robert Noel appeared on Mr. Davis’ behalf in place of respondent. Mr. Noel waived Mr. Davis’ appearance and formal arraignment and entered a plea of not guilty on Mr. Davis’ behalf. Respondent did not inform Mr. Davis that he would not be appearing and did not discuss with Mr. Davis the waiver of Mr. Davis’ appearance, the waiver of arraignment, or what plea would be entered.
Mr. Davis received notice that his trial date was April 4, 2005 and appeared in court on that date. Attorney Kenneth Trahan appeared in place of respondent and ^requested a continuance. Respondent did not inform Mr. Davis that he would not be present or that a continuance would be requested.
*981 In May 2005, Mr. Davis sent respondent a letter, terminating his services and requesting a refund of the fees he paid. Respondent failed to provide a refund at that time.
After hiring attorney Amado Leija to handle the DWI matter, Mr. Davis learned that respondent attended an administrative hearing on his behalf. Respondent never informed Mr. Davis of the hearing.
In September 2007, frustrated by “the length of time it took in order to get a response from Attorney Scott,” Mr. Davis filed a disciplinary complaint against respondent. In November 2007, respondent refunded a total of $1,130 to Mr. Davis. Thereafter, Mr. Davis sent the ODC a letter dated November 14, 2007, indicating that he and respondent came to an “amicable resolution concerning my complaint. Therefore, this matter can be considered closed.”
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.2, 1.3, 1.4, 1.16(d) (obligations upon termination of the representation), and 8.4(a).
DISCIPLINARY PROCEEDINGS
In November 2007, the ODC filed the formal charges in 07-DB-071. In February 2008, the ODC filed the formal charges in 08-DB-020. Respondent answered both sets of formal charges and denied any misconduct. The two matters were then consolidated by order of the hearing committee chair before being considered together by the hearing committee.
| .-Respondent and the ODC both called witnesses to testify at the formal hearing. The parties also entered into a stipulation of facts as detailed in the hearing committee’s report below.

Hearing Committee Report

After considering the evidence and testimony presented at the hearing, the hearing committee adopted the stipulation of facts presented by the parties, and made its own findings, as follows:

The Wesley Matter

Stipulated facts

III. In 2004, Ms. Wesley purchased a used vehicle from a dealership in the Monroe area. Thereafter, Ms. Wesley began to experience problems with the vehicle;
IV. On November 15, 2004, Ms. Wesley consulted with respondent to determine what legal remedies she may have and paid him a $45 consultation fee;
V. In early January 2005, Crescent Bank filed a lawsuit against Ms. Wesley based on her failure to make timely car payments;
VI. In February 2005, Ms. Wesley met with respondent to discuss the suit filed by Crescent Bank, and respondent agreed to assist Ms. Wesley in the matter;
VII. The court record reflects the following activities:
A. On February 28, 2005, Crescent Bank obtained a preliminary default;
B. On March 16, 2005, Crescent Bank obtained a default judgment. That same day, respondent filed an answer and third party demand, which was returned for failure to pay court costs;
[,;C. On April 6, 2005, respondent filed a motion for new trial, asserting that he filed an answer the same day the default judgment was entered, which answer was returned to him because the default judgment was signed while the answer was still in the clerk of court’s office;
*982 D. On April 11, 2005, the judge denied the motion for new trial;
E. On April 14, 2005, opposing counsel filed a motion to vacate judgment, and the judge vacated the judgment;
F. On May 12, 2005, Crescent Bank filed a motion for summary judgment;
G. On May 27, 2005, respondent filed an opposition to the motion for summary judgment;
H. On July 6, 2005, the court granted the summary judgment;
VIII. In October 2006, respondent, through his secretary, informed Ms. Wesley that a pre-trial conference had been set for January 17, 2007. The conference date was subsequently removed from the docket;
IX. On April 10, 2007, Crescent Bank obtained a garnishment on Ms. Wesley’s wages to satisfy the summary judgment.

Findings made by the hearing committee

The committee determined that Ms. Wesley was a “very credible witness.” The committee rejected respondent’s effort to justify his handling of Ms. Wesley’s legal matter, characterizing his conduct as an “egregious mismanagement of a redhi-bitory defect claim.” The committee found that respondent failed to keep Ms. Wesley informed about activities concerning her legal matter, failed to diligently pursue her legal matter, and failed to initiate a lawsuit on her behalf, despite his assurances that he would do so. Based on these findings, the committee determined that respondent 17violated Rules 1.2, 1.3, 1.4, 3.2, and 8.4(a) of the Rules of Professional Conduct. The committee did not find a violation of Rule 1.5(b).

The Davis Matter

Stipulated facts

X. In late 2003, following the death of his mother, Mr. Davis retained respondent for a fee of $550 to handle the succession. Respondent filed the necessary pleadings, and a judgment of possession was issued on January 16, 2004;
XI. In December 2004, Mr. Davis was arrested on DWI (first offense) and careless operation charges. Mr. Davis consulted with respondent, and on January 3, 2005, Mr. Davis paid respondent a “flat fee” of $1,050 to represent Mr. Davis in connection with those charges;
XII. Mr. Davis’ arraignment was scheduled for January 19, 2005. On January 3, 2005, respondent advised Mr. Davis that he did not have to appear at the arraignment. On January 19, 2005, attorney Robert Noel appeared in place of respondent and waived Mr. Davis’ appearance and formal arraignment and entered a plea of not guilty on Mr. Davis’ behalf;
XIII. Mr. Davis received notice that the matter was set to got to trial on April 4, 2005 and appeared in court on that date. Attorney Kenneth Trahan appeared in place of respondent and requested the trial date be rescheduled; and
XIV. On May 12, 2005, Mr. Davis sent respondent a termination letter, requesting a refund of the fees previously paid to respondent for the succession matter and the DWI matter (a total of $1,600).

\RFindings made by the hearing committee

The succession judgment drafted by respondent contained a typographical error, which was discovered when Mr. Davis attempted to refinance the property. The date Mr. Davis contacted respondent to correct the error was in dispute; however, Mr. Davis’ demand to correct the error *983 occurred during one limited conversation. There was no testimony that respondent knew the correction was time-sensitive. Before respondent could act, the lender, not Mr. Davis, hired attorney Patrick Wright to correct the error so the closing could proceed. Mr. Wright was paid for this work on February 18, 2005.
Before learning of the typographical error in the succession judgment, Mr. Davis was charged with DWI and hired respondent to handle the matter. On April 4, 2005, the date the case was set to go to trial, Mr. Davis was in court. Respondent had a conflict; therefore, he had attorney Kenneth Trahan stand in for him and request a new trial date, which was granted. Respondent did not inform Mr. Davis of the conflict or that a continuance would be requested, which inconvenienced Mr. Davis. The inconvenience prompted Mr. Davis to terminate respondent’s services and hire attorney Amado Leija to represent him on the DWI charge. On January 27, 2006 and May 30, 2006, Mr. Davis sent respondent additional letters demanding a refund.
Respondent told Mr. Davis to come by his office to receive the refund of the fee for the DWI case. Mr. Davis paid respondent a total of $1,600 for the succession and DWI cases, and he received a total refund of $1,130. However, Mr. Davis did not go to respondent’s office as respondent advised. Mr. Davis did not expect a full refund because respondent rendered some services. As such, he left the refund amount up to respondent. Mr. Davis was satisfied with the refund and requested that the ODC dismiss the complaint. He only testified at the hearing because of the IflODC’s subpoena. He impressed the committee as being someone who takes offense quickly.
Mr. Leija stated that “somebody” attended an administrative hearing for Mr. Davis. He also stated that it is customary for attorneys to stand in for other attorneys at arraignments as a courtesy and that only “sometimes” will an attorney let a client know another attorney is standing in.
The committee determined that based upon Mr. Davis’ testimony and the exhibits, there was not clear and convincing evidence that respondent violated any Rules of Professional Conduct. Accordingly, the committee recommended that the charges in the Davis matter be dismissed.
The committee determined that respondent acted knowingly in the Wesley matter, and his mismanagement “prevented [Ms.] Wesley from having the opportunity to put her claim forward in a court of law.” Relying on the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined that the applicable baseline sanction is suspension. The committee found the following aggravating factors present: prior disciplinary offenses,[2] a pattern of misconduct, multiple offenses, and substantial experience in the practice of law (admitted 1979). As stipulated by the parties, the committee found in mitigation that respondent demonstrated a cooperative attitude toward the disciplinary proceeding.
Finding discipline is warranted for respondent’s misconduct in connection with the Wesley matter, the committee agreed that the sanction proposed by the ODC in its pre-hearing memorandum is appropriate. Accordingly, the committee recom *984 mended that respondent be suspended from the practice of law for one year, | mfully deferred, subject to two years of supervised probation with the following conditions: 1) respondent shall establish and maintain an effective calendaring system and method to communicate with clients and obtain assistance from the Louisiana State Bar Association’s practice assistance counsel in the creation of a proper law office management program; and 2) respondent shall respond to all reasonable requests of his probation monitor, including maintaining monthly contact with the monitor.
Both respondent and the ODC filed objections to the hearing committee’s report. The ODC did not take issue with the sanction recommended by the committee, but suggested that the committee erred in recommending dismissal of the formal charges in the Davis matter. Respondent argued that the committee erred in finding that he violated the Rules of Professional Conduct in the Wesley matter.

Disciplináis Board Recommendation

After reviewing this matter, the disciplinary board found that respondent violated Rules 1.2, 1.4, and 8.4(a) with x-espect to Mr. Davis’ DWI case. The board reasoned that respondent did not know whether Mr. Davis wanted a continuance, and Mr. Davis did not approve in advance of another lawyer standing in respondent’s stead to discuss a continuance with the court. The board found no misconduct with respect to respondent’s handling of Mr. Davis’ succession proceeding.
With respect to the Wesley matter, the board found respondent failed to demonstrate manifest error in the committee’s finding that he breached his duty to Ms. Wesley by failing to file a redhibition suit on her behalf. Accordingly, the board found that the factual allegations of the formal charges relating to respondent’s neglect of Ms. Wesley’s legal matter were proven by clear and convincing evidence.
_J_yThe board determined that respondent knowingly and intentionally violated duties owed to his clients. He caused “potentially serious” harm to Ms. Wesley but only “minimal” harm to Mr. Davis. Based on the ABA’s Standards for Imposing Lawyer Sanctions, the board determined that the baseline sanction is suspension.
The board agreed with the aggravating factors found by the committee. The board found no mitigating factors are present.
Given the applicable aggravating factors and this court’s prior jurisprudence involving similar misconduct, the board recommended that respondent be suspended from the practice of law for one year and one day, fully deferred, subject to two years of supervised probation with the conditions proposed by the hearing committee. Four board members dissented and would recommend that respondent be suspended from the practice of law for one year and one day, with all but ninety days deferred.
Respondent filed an objection to the disciplinary board’s recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any *985 way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard 112is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
In this matter, the record supports the stipulation of facts and the hearing committee’s factual findings. Based on those facts, respondent neglected Ms. Wesley’s legal matter and failed to properly communicate with her. He also failed to properly communicate with Mr. Davis with respect to his DWI matter. In acting as he did, respondent violated Rules 1.2, 1.3, 1.4, 3.2, and 8.4(a) of the Rules of Professional Conduct in the Wesley matter and Rules 1.2, 1.4, and 8.4(a) in the Davis matter.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent knowingly violated duties owed to his clients. He caused harm to both Ms. Wesley and Mr. Davis. The baseline sanction is a suspension from the practice of law.
Aggravating factors consist of prior disciplinary offenses, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the | ^conduct,[3] and substantial experience in the practice of law. The sole mitigating factor is respondent’s cooperative attitude toward the disciplinary proceedings.
Considering all-the circumstances of this case, we find the appropriate sanction for respondent’s misconduct is a six-month suspension from the practice of law, fully deferred. Any additional misconduct by respondent within one year from the finality of this judgment may be grounds for making the deferred suspension executory, or imposing additional discipline, as appropriate.
DECREE
Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Louis G. Scott, Louisiana Bar Roll number 11882, be and he hereby is suspended from the practice of law for six months. This suspension shall be deferred in its entirety, subject to the condition that any additional misconduct by respondent within one year from the finality of this judgment may be grounds for making the deferred suspension executory, or imposing additional discipline, as appropriate. *986 All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty-days from the date of finality of this court’s judgment until paid.
CLARK, J., dissents and assigns reasons.
KNOLL, J., dissents for reasons assigned by CLARK, J.

 Chief Justice Kimball not participating in the opinion.

. Respondent, testified that he requested payment of advance court costs from Ms. Wesley on more than one occasion prior to June 2005.

. Respondent was previously the subject of a complaint alleging that he neglected a legal matter and failed to return a client's file. In April 2005, the ODC referred the complaint to diversion, which respondent successfully completed in December 2005.

. Particularly disturbing is the fact that respondent continues to blame Ms. Wesley's failure to pay court costs for his neglect of her legal matter. Pie fails to acknowledge that the appropriate course of action, given her failure to pay court costs, was to timely withdraw from the representation to allow her to seek new counsel. Respondent also fails to acknowledge that he has a pattern of failing to communicate with clients regarding the direction of the representation, which is evident in both the Wesley and Davis matters. Again, he makes excuses or blames his client for his failure to communicate.