*772
 
 ATTORNEY DISCIPLINARY PROCEEDINGS
 

 PER CURIAM.
 

 | ,This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Kenneth F. Sarama, an attorney licensed to practice law in Louisiana.
 

 UNDERLYING FACTS
 

 In June 1994, the State of New York filed a tax warrant in the amount of $4,930.42 against Michael Sullivan after he failed to file sales tax returns for his business. In the latter part of 2004, Mr. Sullivan hired respondent to resolve his tax debt. Respondent and Mr. Sullivan did not have a written attorney-client contract, but respondent told Mr. Sullivan he would charge him $150 per hour.
 

 Between the time he retained respondent in 2004 and July 26, 2005, Mr. Sullivan sent respondent a total of $17,400, believing respondent was forwarding the bulk of the funds to the State of New York Department of Taxation and Finance (“NYDTF”) to pay his tax debt. Respondent failed to deposit the funds into his trust account, failed to provide Mr. Sullivan with periodic accountings, and failed to provide Mr. Sullivan with periodic bills for his fees. Respondent also failed to use any of the funds to pay Mr. Sullivan’s tax debt. Nonetheless, between late 2004 and May 2007, respondent falsely informed Mr. Sullivan that the funds were being used |2for that purpose. With penalties and interest accruing, Mr. Sullivan’s tax debt grew to $16,190.32 as of March 11, 2005 and $22,375.42 as of August 16,2007.
 

 During the representation, respondent had minimal contact with the NYDTF on Mr. Sullivan’s behalf. On January 11, 2005, the NYDTF returned a power of attorney to respondent, which would authorize him to assist Mr. Sullivan, because it was partially illegible and did not contain Mr. Sullivan’s tax identification number. The NYDTF’s records have never contained a proper power of attorney to allow respondent to contact the NYDTF on Mr. Sullivan’s behalf. On March 11, 2005, respondent spoke to an employee at the NYDTF concerning both the illegible power of attorney and the general information the NYDTF could convey to him without a power of attorney. According to NYDTF’s records, respondent had no further contact with it on Mr. Sullivan’s behalf.
 

 On March 26, 2007, Mr. Sullivan contacted the NYDTF and discovered no payments had been made on his tax debt. As such, Mr. Sullivan consulted attorney Gretchen Bjork, who sent respondent a letter dated May 16, 2007 notifying him that Mr. Sullivan had terminated his representation. The letter requested that respondent provide Mr. Sullivan with an accounting and forward Mr. Sullivan’s file to Ms. Bjork. In a response dated June 11, 2007, respondent included a brief, undetailed invoice claiming to have worked 117 hours on Mr. Sullivan’s case, earning a fee of $17,550. He also included only partial file materials.
 
 [1]
 

 DISCIPLINARY PROCEEDINGS
 

 In April 2008, the ODC filed one count of formal charges against respondent, alleging that his conduct violated the follow
 
 *773
 
 ing provisions of the Rules of ^Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5 (fee arrangements), 1.15 (safekeeping property of clients or third persons), 1.16(d) (obligations upon termination of the representation), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). Respondent answered the formal charges and denied the misconduct. This matter then proceeded to a formal hearing on the merits.
 

 Hearing Committee Report
 

 After considering the testimony and evidence presented at the hearing, the hearing committee found the following:
 

 Both respondent and Mr. Sullivan testified that there was never a clear delineation regarding what portion of Mr. Sullivan’s funds would be used to pay the tax debt and what portion would be used to pay respondent’s fee. After sending respondent several checks totaling more than $17,000 without receiving a detailed billing statement, Mr. Sullivan contacted the NYDTF and learned it had not received any payments toward his tax debt. Respondent testified that he thought Mr. Sullivan understood the $17,400 was all for attorney’s fees. However, respondent offered no credible testimony regarding what, if any, services he performed that warranted a $17,400 fee.
 

 Respondent misinformed Mr. Sullivan concerning the status of his tax debt matter. Respondent also falsely informed Mr. Sullivan that the funds he was paying respondent were being used to make payments on and reduce his tax debt when, in fact, this was not the case. Furthermore, respondent did not inform Mr. Sullivan that he had only minimal contact with the NYDTF. Nonetheless, in June 2007, 1 respondent provided Ms. Bjork with an invoice that claimed he worked 117 hours, earning a $17,550 fee, without any explanation or detailed billing.
 

 Respondent testified that he did not place any of the funds Mr. Sullivan paid him into his trust account. Respondent further testified that he never provided Mr. Sullivan with a detailed accounting of the work he had done to earn the fees.
 

 Ms. Bjork sent a written request for Mr. Sullivan’s file to respondent on May 16, 2007. Respondent forwarded Mr. Sullivan’s file to Ms. Bjork on June 11, 2007. This time frame was not unreasonable.
 

 Based on these facts, the committee determined that respondent violated Rules 1.3, 1.4, 1.5, and 8.4(c) of the Rules of Professional Conduct. The committee did not address Rule 1.15 and found no violation of Rule 1.16(d).
 

 The committee determined that respondent violated duties owed to his client and the legal profession. He acted knowingly and caused potential injury to his client. Citing numerous standards from the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the committee indicated that suspension or disbarment may be appropriate.
 

 The committee found the following aggravating factors present: prior disciplinary offenses,
 
 [2]
 
 a dishonest or selfish motive, vulnerability of the victim, and substantial experience in the practice of law (admitted 1982). The committee did not indicate whether any mitigating factors were present.
 

 
 *774
 
 Under these circumstances, the committee recommended that respondent be suspended from the practice of law for two years. The committee further recommended that respondent refund the entire amount Mr. Sullivan paid him, plus legal interest from July 2005.
 

 |,-,The ODC filed an objection to the hearing committee’s report, objecting only to the committee’s failure to find a violation of Rule 1.16(d) of the Rules of Professional Conduct, as respondent’s failure to refund the unearned fee to Mr. Sullivan constitutes a violation of this rule.
 

 Disciplinary Board Recommendation
 

 After review, the disciplinary board found that the hearing committee’s factual findings do not appear to be manifestly erroneous. The board determined that respondent violated Rule 1.3 of the Rules of Professional Conduct by failing to conduct any meaningful work on Mr. Sullivan’s tax matter, which remains unresolved, despite collecting $17,400 in legal fees. The board further found that, although respondent may have communicated with Mr. Sullivan on a regular basis, he misinformed Mr. Sullivan of the actual status of his case and the actual use of the funds Mr. Sullivan was paying him, in violation of Rules 1.4 and 8.4(c). Respondent received an exorbitant fee, which he admitted to the committee may have been unreasonable. Therefore, the board found that respondent violated Rule 1.5. Furthermore, despite the fact that a large portion of the funds paid by Mr. Sullivan represent unearned fees, respondent maintains that he earned the entire fee and refuses to refund any money to Mr. Sullivan, in violation of Rule 1.16(d). The board also found that respondent’s failure to refund the unearned fee amounts to conversion, in violation of Rule 1.15.
 

 The board determined that respondent knowingly, if not intentionally, violated duties owed to his client and the legal profession. Respondent caused serious actual harm to Mr. Sullivan by charging and collecting a substantial fee while performing only minimal work. Furthermore, the board determined that the harm is ongoing, as | ^respondent has refused to refund any money to Mr. Sullivan, whose tax debt remains unsatisfied.
 

 Based on the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the board determined that the baseline sanction is disbarment. In further support of disbarment as the baseline sanction, the board explained:
 

 Respondent knowingly and repeatedly deceived his client regarding the work he was doing and the status of his case. Respondent’s repeated misrepresentations to his client were done with the goal of rationalizing the exorbitant fee he had charged and collected. This conduct amounts to conversion by deceit. As a result of the Respondent’s actions, Mr. Sullivan is still liable for the original tax debt, which could have been satisfied by the money he paid to Respondent.
 

 In aggravation, the board found prior disciplinary offenses, a dishonest or selfish motive, refusal to acknowledge the wrongful nature of the conduct, substantial experience in the practice of law, and indifference to making restitution. The board determined that no mitigating factors are present.
 

 In determining an appropriate sanction, the board cited
 
 In re: Decker,
 
 05-1550 (La.12/16/05), 916 So.2d 1023, wherein this court disbarred an attorney who collected a $5,500 fee but failed to perform any work on a succession matter. The attorney also failed to refund the unearned fee, despite the client’s request, and had a prior disciplinary history involving similar misconduct.
 

 
 *775
 
 In light of the aggravating factors, particularly respondent’s failure to acknowledge the wrongful nature of his conduct and his failure to make restitution to Mr. Sullivan, the board recommended that respondent be disbarred. The board further recommended that respondent be ordered to pay restitution to Mr. Sullivan, plus legal interest from July 26, 2005.
 

 | Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
 

 DISCUSSION
 

 Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence.
 
 In re: Quaid,
 
 94-1316 (La.11/30/94), 646 So.2d 343;
 
 Louisiana State Bar Ass’n v. Boutall,
 
 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings.
 
 See In re: Caulfield,
 
 96-1401 (La.11/25/96), 683 So.2d 714;
 
 In re: Pardue,
 
 93-2865 (La.3/11/94), 633 So.2d 150.
 

 The record of this matter supports a finding that respondent neglected Mr. Sullivan’s tax debt matter, failed to adequately communicate with Mr. Sullivan, misrepresented that he was negotiating with the NYDTF and forwarding Mr. Sullivan’s funds to pay the tax debt, charged an unreasonable fee, failed to account for or refund an unearned fee, and failed to keep Mr. Sullivan’s funds in his trust account or provide an accounting of said funds. Furthermore, by claiming Mr. Sullivan’s funds as his fee instead of using them to pay Mr. Sullivan’s tax debt, as Mr. Sullivan desired and believed would occur, respondent converted those funds to his own use. Based on these findings, respondent has violated the Rules of Professional Conduct as alleged in the formal charges.
 

 Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining |sa sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct.
 
 Louisiana State Bar Ass’n v. Reis,
 
 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances.
 
 Louisiana State Bar Ass’n v. Whittington,
 
 459 So.2d 520 (La.1984).
 

 We agree with the disciplinary board that respondent knowingly, if not intentionally, violated duties owed to his client and the legal profession. Likewise, we agree that he caused Mr. Sullivan substantial harm. The baseline sanction for respondent’s misconduct is disbarment. We also agree with the board’s assessment of the aggravating factors and its determination that the record supports no mitigating factors.
 

 In claiming Mr. Sullivan’s $17,400 as his attorney’s fees, which the record indicates is unjustified, respondent has converted those funds to his own use. Respondent exacerbated this misconduct by misrepresenting to Mr. Sullivan that the funds were being used to pay his tax debt and by failing to refund any portion of the funds to Mr. Sullivan.
 

 Under these circumstances, we find a downward deviation from the baseline
 
 *776
 
 sanction of disbarment is unwarranted. Accordingly, we will adopt the board’s recommendation and disbar respondent. We will further order respondent to make full restitution of the sums paid by Mr. Sullivan, plus legal interest from July 26, 2005.
 

 |;,DECREE
 

 Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record, it is ordered that Kenneth F. Sara-ma, Louisiana Bar Roll number 1583, be and he hereby is disbarred. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. It is further ordered that respondent shall make full restitution to Michael Sullivan, plus legal interest from July 26, 2005. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
 

 [1]
 

 . Respondent claims most of Mr. Sullivan's file was destroyed by damage caused by Hurricane Katrina.
 

 [2]
 

 . In 1997, this court imposed a fully deferred six-month suspension for respondent’s conversion of client funds and failure to cooper-ale with the ODC in its investigation.
 
 In re: Sarama,
 
 97-0452 (La.6/13/97), 695 So.2d 517.